(84 South. 120)

No. 23427.

STATE v. BILLHARTZ.

In re BILLHARTZ.

(Nov. 3, 1919. Dissenting Opinion Nov. 8, 1919.
Rehearing Denied March 12, 1920.)

*(Syllabus by the Court.)*

MUNICIPAL CORPORATIONS ⬤⟿590 — STATUTE
AUTHORIZING CITY TO CLOSE CISTERNS HELD
VOID.

The purposes, terms, and conditions for and
upon which the property tax payers of New
Orleans consented that their property should be
subjected to a special tax, to be funded into
bonds the proceeds of which were to be expend-
ed in the acquisition, by construction or other-
wise, of water, sewerage, and drainage systems,
were set forth in detail in Act No. 6 of 1899
(extra session) which, by vote of the entire
electorate of the state, was incorporated in
and made part of the Constitution, after which
it is clear that ordinarily no change could have
been made therein by mere legislative enactment.
Section 35 of the act, however, declares:

"That, as it is proposed to have this act rati-
fied by the Constitution, it is hereby specially
declared to be the intent of this act, and of said
ratifying constitutional amendment, that the
General Assembly reserves the right *to amend
this act* in any respect not violative of the con-
ditions upon which said special tax was voted by
the property tax payers of the city of New Or-
leans, and not impairing the vested rights, or
the contract rights, of the holders of the bonds
issued under its provisions."

Act 270 of 1908 purporting to impose upon
the property tax payers other conditions than
those imposed by the act of 1899, and not pur-
porting to amend that act:

*Held,* said act of 1908 is incompetent legis-
lation, because, having been enacted as an inde-
pendent statute, and not as an amendment to
the act of 1899, it was unauthorized by section
35 thereof, and, if given effect, would be viola-
tive of the condition, plainly implied, that the
obligations of the property tax payers, under the
contract evidenced by that act, are not subject
to change by independent and miscellaneous
legislation, but, to the extent thereby authorized,
only by means of a direct amendment of the
act and contract whereby they were imposed
and assumed.

Provosty, J., dissenting.

Certiorari to Criminal District Court, Par-
ish of Orleans.

J. Billhartz was convicted of violating a
regulation of the Sewer and Water Board,
the conviction was affirmed on appeal fo the
criminal district court, and defendant brings
certiorari. Conviction and sentence annulled,
and defendant discharged.

Alfred J. Bonoma and R. A. Dowling, both
of New Orleans, for applicant.

Chandler C. Luzenberg, Dist. Atty., J. Ar-
thur Charbonnet, Asst. Dist. Atty., and Wal-
ter L. Gleason, Sp. Counsel Sewerage and
Water Board, all of New Orleans (Edgar H.
Bloch, of New Orleans, of counsel), for the
State.

Statement of the Case

MONROE, C. J. The affidavit upon which
this prosecution (in the Second criminal court
of New Orleans) is based charges that de-
fendant—

"at No. 603 Deslonde street, did then and there
violate a certain resolution of the sewerage and
water board of New Orleans, relative to the
demolition and removal from the premises of
all cisterns, tanks, and other water receptacles,
duly adopted July 13, 1916, and promulgated
July 18, 1916, in accordance with section 2 of
Act 270 of 1908 and section 20 of Act 6 of Ex-
tra Session Acts 1899, as amended, etc., by fail-
ing to remove and abolish a cistern from said
premises."

The resolution thus referred to reads as
follows:

"Whereas, notices to enforce the connection
of inhabited premises of the city of New Or-
leans with the public water supply of the sewer-
age and water board have been sent to the own-
ers of property throughout the city of New
Orleans in accordance with the rules and regu-
lations of this board; and

"Whereas, most of the inhabited premises in
the city of New Orleans are connected with the
said system and are taking the water supply
therefrom; and

"Whereas, the existence of cisterns, tanks,
wells, and other receptacles are a menace to
the health of the city; and

"Whereas, Act 270 of the General Assembly

of the state of Louisiana for the year 1908 authorized the sewerage and water board to cause the abolition thereof;

"Now, therefore, be it resolved that the following rules and regulations be made part of the permanent rules and regulations of the sewerage and water board, and as such promulgated in accordance with law, to wit:

"After the 1st day of the month of August, 1916, it shall be the duty of the owners of each inhabited premises in the city of New Orleans, which is connected with the water system of the sewerage and water board, to cause the demolition and removal from the premises of all cisterns, tanks, and other water receptacles, and shall also close all wells (except artesian wells). That the general superintendent shall from time to time send written notices, addressed to the owners of property failing to abolish or remove any cistern, tank, or other water receptacle, or failing to close any well (except artesian wells), commanding said delinquent property owner to comply with the rules and regulations of the sewerage and water board within a period of ten (10) days. That any person failing to comply with the said order of the general superintendent shall be subject to a fine not exceeding twenty-five ($25.00) dollars for each offense, or to imprisonment not exceeding thirty days, or both such fine and imprisonment, in the discretion of the court having jurisdiction of the offense. The general superintendent shall also have the authority, upon default of any property owner, to go upon the premises of said defaulting property owner and cause the demolition and removal of all cisterns, tanks, and other receptacles, and to close all wells (except artesian wells), the whole to be done at the cost and expense of said property owner, which said cost and expense shall be a lien on said property, equal in rank to the lien of taxes as provided for by section 3 of Act 270 of 1908."

Defendant filed a demurrer, which having been overruled, he was tried and convicted, and was sentenced to 30 days' imprisonment, and he thereupon appealed to the criminal district court for the parish of Orleans, where the conviction and sentence were affirmed. He then obtained from this court a writ of certiorari, and the record has been sent up, to the end that those rulings may be here reviewed, quoad the questions of law involved therein.

Changing somewhat their order as stated in the demurrer, and condensing them, the grounds therein set up are, in substance, as follows:

(1) That the statute (Act 270 of 1908) and resolution, which are said to authorize this prosecution, involve the grant to, and exercise by, the sewerage and water board of legislative powers which it was incompetent for the General Assembly to delegate to that board; that they impair the obligations of contracts, devest vested rights, and, under pretext of a lawful exercise of the police power, operate as an unreasonable, unnecessary, and unlawful abuse of that power.

(2) That they purport to deprive defendant of his liberty, by compelling him to drink river water, as furnished to him, and preventing him from keeping, drinking, or using rain water, and to authorize the taking and damaging of his property without due process of law, and without adequate compensation, in contravention of both state and federal Constitutions.

(3) That they contravene the health ordinances of the city of New Orleans and of the state and parish boards of health.

### Opinion.

As the affidavit upon which the prosecution is based sets up the resolution of the board as its immediate authority, and sets up Acts 6 of 1899 and 270 of 1908, as the authority for the resolution, it will conduce to a better understanding of the case to consider the demurrer in connection with the following résumé of the history and textual provisions of those statutes, to wit:

In April, 1899, the requisite number of property tax payers of New Orleans petitioned the mayor and council of that city to call an election upon the question of levying a special tax, and the funding of the same into bonds, the proceeds of which were to be devoted (1) to the acquisition (by construction, purchase, or both) of a system of waterworks, the ex-

tension thereof, and the purification of the water supply therefrom; (2) the construction of a free sewerage system and free water therefor; and (3) the completion of the public drainage system, then in process of construction. The petitioner also prayed that, "when said tax is voted, the council will organize a sewerage and water board * * * for the purpose of constructing, controlling, maintaining, and operating said water and sewerage system," and further prayed that there should be submitted, at the election, not only the questions of the levying of the tax and the issuance of the bonds, but also the question of the manner of the selection of the commissioners to constitute the board to be organized for the purpose or purposes above stated. The election was accordingly held on June 6, 1899; the proposition to levy the tax, etc., was sustained; the electors, presumably expressed themselves in regard to the selection of the commissioners; and, on June 22, the tax was levied. In order, however, to make effective, in all respects, the action so taken, it was necessary to obtain a ratification thereof by constitutional amendment, and the General Assembly (having been convened on August 8, 1899, in extra session) passed the Act No. 6 of 1899, which by joint resolution (of the same session), was proposed as an amendement to the Constitution, and, as such, adopted at the general election held in the month of April following. The act in question, after other provisions, declares:

"Sec. 8. * * * That, for the purpose of constructing, controlling, maintaining and operating the public water and public sewerage system of the city of New Orleans, there is hereby organized and constituted a sewerage and water board, to be composed," etc. (as requested by the electors).

Other sections provide for the officers, employés, and meetings of the board, and confer certain powers incidental and necessary to the purposes for which it was organized. Section 20 declares:

"That the said board shall have full power and authority to make all needful rules and regulations for the use of the said public system of sewerage and free water supply furnished therewith, and to prevent the obstruction thereof or interference therewith or damage thereto, and to compel all premises in the city of New Orleans to be connected with said system, and to compel the closing and discontinuance of all other sewers, and all vaults, cesspools, privies, water-closets, urinals, foul water drains and outlets of any kind of fluid material whatever; and any violation of the rules and regulations so established by said board, and duly promulgated in the official journal, shall be punished by a fine not exceeding $25.00 for each offense, or by imprisonment not exceeding 30 days for each offense, or by both, in, the discretion of the court having jurisdiction of the offense. * * * Nothing in this act shall be construed as taking away the inspecting and supervisory power of the board of health of the city of New Orleans, over the sanitary conditions of premises."

Section 21 declares:

"That the said board shall have power to fix the rates to be charged private consumers of water, and to collect the same from all persons who use water (except for sewerage purposes only) from the public water supply of the city of New Orleans, except the city of New Orleans and her public institutions [specifying certain other public and quasi public corporations and institutions]. Said board shall have the further power to make reasonable rules and regulations for the use and consumption by such pay customers and by such free consumers of the water supply furnished them, and to prevent the obstruction of, interference with, or damage to the pipes, mains and other appurtenance of said water system, and any violation of such reasonable rules and regulations so established by said board, and duly promulgated in the official journal, shall be punished by a fine not exceeding $25.00 for each offense, or by imprisonment not exceeding 30 days for each offense, or by both, in the discretion of the court having jurisdiction of the offense."

Section 35 reads:

"That, as it is proposed to have this act ratified by an amendment to the Constitution, it is hereby officially declared to be the intent of this act, and of said ratifying constitutional amendment, that the General Assembly reserves the right and power to amend this act in any respect not violative of the conditions upon which the said special tax was voted by the

property tax payers of the city of New Orleans and not impairing the vested rights or the contract rights of the holders of the bonds issued under its provisions."

Section 36 of the act repeals all laws or parts of laws in conflict with its provisions.

The Joint Resolution (Act No. 4 of Extra Sessions Acts 1899) submitting the act thus quoted to the electors of the state, as an amendment to the Constitution reads (quoting in part):

"Be it resolved * * * that the following amendment to the Constitution of the state be submitted to the electors, * * * to wit:

"Article 1. The special tax for public improvements, voted by the property tax payers of the city of New Orleans on June 6, 1899, and levied by the city council * * * June 22, 1899, is hereby ratified and its validity shall never be questioned. The special act adopted by the Legislature at the special session held on August 8, 1899, constituting the sewerage and water board of the city of New Orleans, authorizing the city of New Orleans to issue bonds, and providing the means to pay the principal and interest thereof, and for other purposes, cognate to the purposes of the special tax aforesaid, is hereby ratified and approved, specially including the therein reserved legislative right to amend the same; and all provisions of the present Constitution in conflict with the provisions of said act, and with this amendment, are to that extent, and for that purpose only, repealed."

It will be seen, therefore, that the purposes, terms, and conditions for and upon which the property tax payers of New Orleans consented that their property should be subjected to the special tax, which could not have been levied without such consent, were set forth in considerable detail, in an act of the General Assembly, which, by vote of the entire electorate of the state, was incorporated in, and made part of, the Constitution, and which (it may be stated) has so been recognized by this court. State v. Kohnke, 109 La. 861, 33 South. 793; Saunders v. Board, 110 La. 313, 34 South. 457; State ex rel. Sewerage Board v. Michel, 127 La. 685, 53 South. 926; New Orleans Taxpayers' Ass'n v. Sewerage Board, 132 La. 839, 61 South. 843.

In that situation it would, ordinarily, be beyond the power of the General Assembly to make any change in the act in question; in the first place because it was intended, and purported, to set forth the entire contract between the tax payers and the prospective purchasers of the bonds authorized by it; and, in the second place, because the Constitution cannot be changed by legislative enactment. Apparently, however, it was thought that some changes might become necessary, or desirable, in furtherance of the purposes to be accomplished, and the right was reserved to the General Assembly to make such changes, by thus amending the act, notwithstanding that it was to become part of the Constitution. But, considering the unusual, not to say unprecedented, character of the right so reserved, we are of opinion that it can be exercised only in the manner prescribed by, and cannot be extended to include changes not fairly within the contemplation of, the reservation which, as we have seen reads:

"That, as it is proposed to have this act ratified by * * * the Constitution, it is hereby specially declared to be the intent of this act, and of said ratifying constitutional amendment, that the General Assembly reserves the right and power *to amend this act* in any respect, not violative of the conditions upon which the said special tax was voted by the property tax payers of the city of New Orleans and not impairing the vested rights or the contract rights of the holders of the bonds issued under its provisions."

Act No. 111 of 1902 proceeds in the manner thus prescribed; that is to say, *it amends Act No. 6 of 1899*, and, in so doing, merely adds to section 20 certain provisions conferring upon the sewerage and water board authority with respect to the construction of underground work "necessary or incidental" to the plans for drainage already adopted by the city of New Orleans, and amends section 21, by adding thereto the name of a hospital

which had been omitted from those to which free water was accorded for all purposes.

Act 270 of 1908 is an independent statute, which does not purport to amend any pre-existing law. It is entitled:

"An act to authorize the sewerage and water board of New Orleans to require the introduction of water into all inhabited premises in the city of New Orleans, and to abolish or regulate the use of cisterns, tanks, wells and other water receptacles; to make the water rates established by said board and the sums expended in enforcing compliance with its regulations a lien upon premises in which water supplied by said board is used, or on which such expenditures are made, and fixing the rank of such liens; and to provide penalties for the violation of the rules and regulations established hereunder by said board; and to further provide for the recordation and cancellation of said liens."

The preamble declares that due notice has been given with respect to the introduction of the act; that the use of cisterns, tanks, and wells, and other similar water receptacles, as a source of drinking water, is deleterious to the public health, and, in New Orleans, that such receptacles are breeding places for the insects that cause yellow fever and malarial fever; that the sewerage and water board will soon be able to furnish the inhabitants of New Orleans with an abundant supply of pure filtered water, and that the maintenance of the system can only be secured by requiring all the inhabitants of the city to contribute thereto, in the proportion that they use said water for private purposes.

Section 1 declares that, whenever the public water plant of the city of New Orleans, in process of construction by the sewerage and water board shall have been completed and put in operation, the board shall have the power, and it shall be its duty, by proper ordinances and regulations, to require all *inhabited* premises to be connected with the mains and to take therefrom at least such water supply as shall be used thereon for drinking and domestic purposes, exclusive of sewerage, at rates to be fixed in virtue of the powers heretofore vested in said board.

Section 2 reads:

"That said board shall have power to cause the abolition and removal of all cisterns and tanks, and the closing of all wells (except artesian wells), and other water receptacles situated on *improved* premises, and shall have power to regulate the use thereof: Provided, that none of the regulations established by it shall contravene the health ordinances of the city of New Orleans.

Section 3 provides that all ordinances enacted by the board, under the powers granted by the act, may be enforced by the infliction of the penalties prescribed by Act No. 6 of 1899, and its amendments; that the board shall have power, after notice to the owner and default by him, to do, or cause to be done, upon his premises, that which the ordinances require, at the expense of the owner, and that such expense shall be a lien on the property equal in rank to the lien for taxes, and take effect as to third persons when the bill therefor is rendered—the charge for recording not to exceed 25 cents.

Sections 4 and 5 contain further provisions in regard to the lien, and section 6 repeals all conflicting laws.

Whether, if the statute, of which the foregoing is a summary, had been enacted as an amendment to Act No. 6 of 1899, it would be competent legislation, within the terms and meaning of the reservation contained in section 35 of that act, is a question that we do not find it necessary to decide; our conclusion being that it is incompetent legislation, because having been enacted as an independent statute, and not as an amendment to the act of 1899, it was unauthorized by section 35 of that act, and, being so unauthorized, would, if given effect, be violative of the condition, plainly implied, that the obligation of the property tax payers, under the contract evidenced by that act, are not subject to change

by independent and miscellaneous legislation, but should be changed, if changed at all, only by means of a direct amendment of the act and contract whereby they were imposed and assumed.

It is no doubt true that, ordinarily, the General Assembly may, by an independent statute, repeal, abrogate, or, in effect, amend pre-existing legislation, the later statute, in such case, becoming the law, in the event of conflict, as the last expression of legislative will; but the case here presented is not an ordinary case. The general and fundamental rule is that no provision, no language, of the Constitution, can be altered by mere legislative enactment, and we have here the remarkable exception to that rule, where the Constitution itself declares that a certain provision may be changed, subject to specified conditions, not, by miscellaneous legislation in conflict therewith, but by amendment. The Constitution also declares that (article 32):

"No law shall be revived, or amended by reference to title, but, in such cases, the act revived, or section as amended, shall be re-enacted and published at length."

Act No. 6 of Extra Session Acts 1899, as part of the Constitution, provides that it may be amended, not repealed or abrogated, by conflicting legislation; and if the requirement, that a law can be amended only by the re-enactment and publication at length of such law or section of the law, is applicable to an ordinary statute, a fortiori is it applicable to a statute which has been embodied in the Constitution; for, if it be a matter of public concern that one who reads an amending statute should thereby be fully informed of its bearing upon the whole subject-matter with which the statute deals, a fortiori should that information be furnished by the reading of an amendment to a law which has become part of the Constitution.

It is therefore ordered and adjudged that the conviction and sentence here made the subject of review be annulled, the affidavit quashed, and defendant discharged.

PROVOSTY, J., dissents and files reasons. See 84 South. 124.