McBRIDE, Judge.
Relators filed these proceedings seeking a mandatory injunction to compel the Sewerage & Water Board of New Orleans to install, without charge to them, a sewerage connection to their premises located on three lots of ground in Plum Orchard Subdivision, east of the Industrial Canal, known by the Municipal No. 4857 Tulip Street. The Board refuses to make the sewerage connection unless relators agree to pay the same charge therefor as was paid by some 73 percent of the owners of property in Plum Orchard Subdivision who were instrumental in having the sewerage mains extended to said subdivision by participating in the costs of installing such service;
*876 As its authority for demanding that rela-tors contribute to the costs of the sewerage line, defendant points to a “rule” or “policy” adopted by it, the gist of which is as follows: In the fringe or outlying sections of the City, where no sewerage lines are located, the property owners of any given area may petition the Board for sewerage lines. The cost of such construction is to be borne partly by the property owners in the area (about 33}/$ per cent) and partly by the Sewerage & Water Board (approximately 662/3 per cent) providing a majority of the property owners agree to contribute on a basis of $2 per front foot for developed property having a septic tank, and $5 per front foot for undeveloped property up to 60 feet, and $2 per front foot for frontage in excess of 60 feet, provided only one connection is required. These contributions are made with the distinct understanding that those property owners who fail to contribute shall not be entitled to a connection until they pay on the same basis as their neighbors who contributed.
After a trial of the case on its merits, the rule nisi for the preliminary mandatory injunction was made absolute, and the Board was condemned to make the sewerage connection from relators’ property line to the sewerage line either on Prentiss Avenue or on Tulip Street without the payment of any costs by or any charges whatever to relators. The district judge refused a suspensive appeal, whereupon the Board applied to the Supreme Court (No. 43,933 of its docket) for writs of certiorari, prohibition and mandamus to coerce such appeal, but the Court refused the writs “since the remedy invoked by relator is in aid of the appellate jurisdiction of the Court of Appeal, the application is properly addressed to that court and not to this tribunal.”
We ultimately directed the trial judge to grant the suspensive appeal as defendant prayed for. In the per curiam we stated that whereas the Supreme Court has declared the action to be a “mandamus proceeding,” it necessarily follows that the right to a suspensive appeal exists.
The interesting history and background of and the purposes for which the Sewerage & Water Board of New Orleans was constituted may be found in State v. Billhartz, 146 La. 855, 84 So. 120, 121, viz.:
“In April, 1899, the requisite number of property tax payers of New Orleans petitioned the mayor and council of that city to call an election upon the question of levying a special tax, and the funding of the same into bonds, the proceeds of which were to be devoted (1) to the acquisition (by construction, purchase, or both) of a system of waterworks, the extension thereof, and the purification of the water supply therefrom; (2) the construction of a free sewerage system and free water therefor; and (3) the completion of the public drainage system, then in process of construction. The petitioner (s) also prayed that, ‘when said tax is voted, the council will organize a sewerage and water board * * * for the purpose of constructing, controlling, maintaining, and operating said water and sewerage system,’ * * *. The election was accordingly held on June 6, 1899; the proposition to levy the tax, etc., was sustained; * * * and, on June 22, the tax was levied. In order, however, to make effective, in all respects, the action so taken, it was necessary to obtain a ratification thereof by constitutional amendment, and the General Assembly (having been convened on August 8, 1899, in extra session) passed the Act No. 6 of 1899, which by joint resolution (of the same session), was proposed as an amendment to the Constitution (of 1898), and, as such, adopted at the general election held in the month of April following. * * *
* * * * * *
“It will be seen, therefore, that the < purposes, terms, and conditions for and *877 upon which the property tax payers of New Orleans consented that their property should be subjected to the special tax, which could not have been levied without such consent, were set forth in considerable detail, in an act of the General Assembly, which, by vote of the entire electorate of the state, was incorporated in, and made part of, the Constitution, and which (it may be stated) has so been recognized by this court. State ex rel. Saunders v. Kohnke, 109 La. [838] 861, 33 So. 793; Saunders v. Board, 110 La. 313, 34 So. 457; State ex rel. Sewerage & Water Board v. Michel, 127 La. 685, 53 So. 926; New Orleans Taxpayers’ Protective Ass’n v. Sewerage & Water Board, 132 La. 839, 61 So. 843.”
Section 20 of Act 6 of 1899, LSA-R.S. 33:4081, sets forth the power of the Board to regulate the sewerage system and the free water supply furnished therewith and to compel all premises in the City of New Orleans to be connected with said system and to require the closing or discontinuance of all other sewers, cesspools, etc.
The framers of the Constitution of 1921 also gave considerable attention to the Sewerage & Water Board of New Orleans. Art. 14, § 23, ratified the special tax for public improvements levied by the City Council in 1899, as authorized by the vote of the property taxpayers of New Orleans in June of that year, and provided “its validity shall never be questioned.” Act 6 of 1899, LSA-R.S. 33:4071 et seq., was also given ratification and approval and the Legislature’s right to amend the same was reserved. Said section further provided that the Sewerage & Water Board ■shall base the rates charged private consumers of water so as to make provision for the maintenance and operation of the public water and sewerage systems, and the City of New Orleans was relieved of the duty of providing in its annual budget or otherwise for the maintenance and operation thereof; the Board was authorized to use the collections from water rates for the maintenance and operation of the public water and sewerage systems and to create a sinking fund for their ultimate renewal. The proviso was also made that the rates charged private consumers of water shall never exceed the cost of operating and maintaining the water, sewerage and drainage systems, and all extensions, replacements, repairs and betterments thereto.
New sections unofficially designated 24.2 to 24.11 were added to Article 14 of the Constitution by Act 3 of 1927, Extra Session (adopted April 17, 1928), LSA, which authorized the City of New Orleans under certain circumstances to issue bonds for the purpose of constructing and extending the sewerage, water and drainage system and made provision for the terms, payment, retirement, etc., of such bonds.
A section designated 23.1 was added to Art. 14 of the Constitution by Act 197 of 1938 (adopted November 8, 1938), which authorized and directed the City of New Orleans to levy and collect for the year 1942 and annually thereafter for 50 years a special ad valorem tax of 2 mills on the dollar for the construction and extension of the sewerage, water and drainage systems of said city.
Section 23.2 was added to Art. 14 by Act 533 of 1948 (adopted November 2, 1948) and authorized the levy and collection by the City of New Orleans for the year 1951 and annually thereafter for 50 years an additional special ad valorem tax of 3 mills on the dollar to be used solely and exclusively for the construction and extension of the sewerage, water, and drainage systems of the city.
It appears abundantly clear from the provisions of both the Constitutions of 1898 and 1921 that the Sewerage & Water Board would construct, operate, maintain, renew and extend the public water, drainage and sewerage systems with funds derived from but four sources, viz.: (1) proceeds of the bonds issued by the City of New Orleans secured by-the special tax *878 voted and levied in the year 1899, (2) collections from consumers ' of water from the public supply, (3) proceeds of bonds issued by the City of New Orleans as authorized by Secs. 24.2 to 24.11 of Art. 14 of the Constitution of 1921, and (4) avails of the special ad valorem taxes authorized by Secs. 23.1 and 23.2 of Art. 14 of the Constitution of 1921. It was never intended that the Sewerage & Water Board would exact from property owners a pro rata of the costs of constructing or extending the sewerage system. Any lingering doubt as to this is dispelled by the provisions of LSA-R.S. 33:4090 (source Sec. 30, Act 6 of 1899), the pertinent portion of which reads:
“All connections with the sewerage and water mains shall be made at the cost of the board from the mains to the edge of the foundations of the buildings on the property line, or if there are no foundations on the property line, then to the property line itself, and from that point on, they shall be made at the cost and expense of the owner of the property.”
It is contended on behalf of the Board that LSA-R.S. 33:4090 does not apply in the instant case because its provisions are applicable only to the extension of sewerage mains paid for solely out of public moneys. It is said that the sewer line to which relators desire the connection was paid for in part by private citizens. We do not think that there is any merit in this contention. Regardless from what source the funds used in the construction were derived, the sewerage line is public property, is part of the public sewerage system under the dominion and control of the Sewerage & Water Board of New Orleans, and relators are entitled to have their premises connected therewith.
Able counsel also argues that the Board is vested with the power of making and adopting rules to further the maintenance and operation of the water, drainage and sewerage systems in the City of New Orleans, and that the rule in question which requires contributions by property owners is entirely reasonable in the light of the exigencies of the present-day situation. It is pointed out to us that the purpose of the rule is to augment funds of the Board in order to provide sewerage service which is essential to the convenience and well being of the people. Under the rule, it is argued, the Board is now able to give, relief to three new areas, whereas, without property-owner contribution, it could give relief only in two areas. The claim is made that the rule serves to accelerate the installation of sewer lines which, in many cases, corrects unsanitary conditions caused by numerous septic tanks crowded into one area.
The record shows that recently the Sewerage & Water Board completed a survey of the water, sewerage and drainage systems of the City, and in that connection the expected demands within the next twenty years as a result of the rapid expansion of the City would be $182,000,000 to defray the cost of basic extensions and new constructions. Within the next five years $58,-000,000 will be required. Such expenditures cannot be met by the Board under present conditions. The Sewerage & Water Board of New Orleans is without authority to issue bonds, and even if the Board of Liquidation, City Debt, and the City of New Orleans consented to issue bonds for the purpose and the property owners-voted favorably on the proposition, several years would elapse before proceeds from the sale of the bonds would be available.
It is manifest that the Sewerage & Water Board of New Orleans is financially unable to extend sewerage service into some of the newly-developed neighborhoods, but the need for funds cannot serve as a legal' basis for the adoption of the rule under which the property owners in outlying sections of the City are required to contribute to the costs of installing the sewerage mains-servicing their property. The rule or policy requiring such contributions is squarely *879 in the teeth of the prohibition contained in LSA-R.S. 33:4090 -and is without effect. If relief from the Board’s present unsatisfactory financial situation is to be forthcoming, such may not be in the form of assessments levied by the Board against those desiring sewerage connections.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., absent.