REGAN, Judge.
Plaintiff, Mrs. Florence M. Holifield, as the owner of property designated by the municipal number 6742 Pontchartrain Boulevard, instituted this suit against the defendant, Sewerage & Water Board of New Orleans, endeavoring to obtain a writ of mandamus compelling it to extend sewer facilities from the intersection of 38th Street and Avenue C to her property, a distance of 960 feet, and insists that the defendant’s refusal to extend its facilities to her property is an arbitrary, capricious, and discriminatory act on its part.
Defendant pleaded the exceptions of no cause or right of action, which were disposed of, and then answered, asserting in substance that there exists no law which entitles the plaintiff to the relief prayed for; that she is 1,900 feet removed from the sewer main and there are only seven intervening residences between that main and her home and it would cost approximately $21,000 to extend sewerage to her property; and finally that its refusal to extend its facilities to her property is not an arbitrary, capricious, or discriminatory act.
From a judgment in favor of defendant, dismissing plaintiff’s suit, she has prosecuted this appeal.
The trial judge made a thorough analysis of this case in his written reasons for judgment, which in our opinion fully encompasses the subject posed for our consideration and the result which we have agreed should be reached:
“Plaintiff seeks a mandamus to compel the defendant to lay 1900 feet of sewer pipe, at a cost of approximately $21,000.-00, merely to serve her two lots of ground, located in Square 71, bounded by West End Shell Road, 38th Street, Avenue ‘A’ and 40th Street, designated as Lots 13 and 14 in Metairie Park Subdivision, measuring each 25 feet front.
“Defendant contends it would be guilty of misuse of public funds if it spent $21,-000.00 merely to serve plaintiff. Plaintiff bought her lots in 1950, at which time and since the area was and is primitive and *279 undeveloped. Act 6 of 1899, Extra Session, indicates that sewerage service should be given to the built-up sections of the city. New extensions stem from the location of the nearest sewer or water main to the adjacent area, and the Board should have discretion to determine what areas on the outskirts of the city and long distances from the location of sewer or water mains should first be served; and further contend that the finances of the Board at this time are in such condition that it could not, even if it wanted to, take care of all the demands that come from the fringe or semi-built-up areas, for sewerage and water connections.
“Clifford Morvant, C.P.A., and auditor for defendant, testified that all funds now available, plus all funds contemplated from all sources, including the year 1962, will amount to $55,028,000.00. This amount includes $19,000,000.00 of Water Revenue Bonds, authority for issuance thereof having been passed by the 1958 Legislature, and to be voted upon by the people in November, 1958. Also included is the surplus of water revenues, after deducting the operating expenses; surplus from millage collections, net after expenditures for normal extensions and replacements; ad valorem bond proceeds of the City of New Orleans; all reserve funds, and all odds and ends that constitute revenue of the Board; that for the years 1958 through 1962, the Board will expend to carry out its Five-Year Capital Improvement Program, the sum of $56,225,500.00, thus leaving a deficit of $1,197,500.00.
“The program for sewerage extensions during the years 1958 through 1962, both inclusive, shows that $13,060,000.00 will be expended throughout the city. Of that amount, $1,000,000.00 is to be expended on the sewer system west of Pontchartrain Boulevard, known as Pontchartrain Pioneers Section, the area involved in this case.
“It is hoped that the $1,000,000.00, plus contributions to be made by the property owners, estimated at $250,000.00, will give sewer service to every square and lot in Metairie Park Subdivision.
“The Five-Year Capital Program does not give the City of New Orleans all of the basic needs that will be required for the next twenty years, in accordance with the exhaustive research made by nationally known consulting engineers, Black & Veatch, Kansas City, Missouri, who estimated that it would.cost $182,000,000.00 to carry out the capital improvements necessary for the proper growth and proper service to the people of New Orleans. The capital program adopted by defendant, .amounting to approximately $58,000,000.00, to be expended within the next five years, is a bobtailed program, included in which ■are only those projects where there is a ‘crying’ need now. The purpose of adopting this curtailed capital improvement program is a matter of utter necessity, because it is impossible for the Sewerage & Water Board, or the City of New Orleans, to secure $182,000,000.00, with which to carry out a complete program to serve the city for the next twenty years.
“Defendant, in the last three years, expended $174,000.00, in plaintiff’s area, solely and only for sewerage service. Two new sewerage pumping stations were installed. These stations were absolutely necessary to carry off the sewerage. A . new force-main was installed to connect the two sewerage stations to the force-main that was installed in the year 1930. Seven different sewerage projects were completed in Metairie Park Subdivision, as shown by Drawing No. 5603-E-7 of the Sewerage & Water Board, identified as Exhibit ‘Sewerage & Water Board 17 Seventy-six to ninety-eight percent of the property owners in the projects involved, contributed either $5.00 or $2.00 per front foot, according to the nature of the property owned by them, towards the cost of these installations.
“Plaintiff was given the opportunity to secure approximately eighty per cent of the property owners, but failed. Her testi-> *280 mony indicates that not more than ten per cent was secured by her, which did not meet the requirements of the rule of the Sewerage & Water Board. That rule was adopted in utter desperation, in an attempt to give as much service as possible to the outlying sections' of the city. Defendant will give plaintiff relief if she can secure voluntary contributions of approximately eighty per cent of the property owners intervening between her lots and the nearest sewer main, the same treatment given all property owners in fringe or outlying areas.
“The city as a corporation, has control over the public places and highways within its bounds, and it is the province of the corporation, and not a judicial tribunal, to determine what improvements shall be made in the streets and canals of the city. Certain Inhabitants of Melpomene Street v. City of New Orleans, 14 La.Ann. 452 (May 1859). (Cited in Hoyle v. New Orleans City R. Co., 23 La.Ann. [535], 537; Carondelet Canal & Navigation Co. v. City of New Orleans, 38 La.Ann. [308], 310; City of New Orleans v. Steinhardt, 52 La.Ann. 1047, 27 So. 586; Brennan v. Sewerage & Water Board, 108 La. 583, 32 So. 563.)
******
“Considerable latitude must be allowed the lawmaking power in regulating private affairs, and, if the regulation operates uniformly upon all persons similarly situated and it is not shown that it is clearly unreasonable and arbitrary, the regulation cannot be judicially declared to be in contravention of constitutional right. Breard v. City of Alexandria [D.C.], 69 F.Supp. 722.
“The cases of State ex rel. Bailey v. Sewerage & Water Board of New Orleans, [102 So.2d 874], and State ex rel. Lanasa v. Sewerage & Water Board of New Orleans [102 So.2d 879], recently decided by the Court of Appeal, do not apply in this case. In those cases, the sewerage line was located in front of the property of the plaintiffs. The Court of Appeal held that •under the provisions of [LSA-]Revised Statutes 33:409o,[1] Sewerage & Water Board is compelled to make the connection .free of cost. In the instant case, the near- ■ est sewer main to plaintiff’s property is 1900 feet away.[2]
“Courts will not order a public officer or board to perform a duty entrusted to it or him unless:
“(1) It is strictly ministerial and devoid .of judgment or discretion; or,
“(2) The duty involves the exercise of judgment or discretion, and the exercise is discriminatory or capricious.
“Since the duty of the defendant is not ministerial, and its refusal or failure to give plaintiff the relief she demands is not discriminatory or arbitrary, plaintiff’s de *281 mand for a mandatory injunction must be denied.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
Me BRIDE, J., absent.

. “All connections with the sewerage and water mains shall be made at the cost of the board from the mains to the edge of the foundations of the buildings on the property line, or if there are no foundations on the property line, then to the property line itself, and from that point on, they shall be made at the cost and expense of the owner of the property.
“Each owner may contract for the putting in of all connections with which he is chargeable, but all such work shall be done under the rules and regulations, and subject to the inspection and control of the board. The board shall take separate bids from contractors for making a property holder’s connections, leaving to each property holder the right to require the work in his premises to be done by the contractor at the bid price, or to employ some one else for that purpose.” (Emphasis supplied.) LSA-R.S. 33:4090.

. “The extension of the sewerage, water and drainage systems shall be made, as far as practicable, in areas adjacent to inhabited portions of the city, divided into squares and lots, and where dedicated streets are open and in use as such, or wherever hereafter opened, dedicated and in use.” (Emphasis supplied.) LSA-R.S. 33 :4092.