JOHNSON, Judge.
On a rule nisi the District Court on July 1, 1959, granted a preliminary injunction prohibiting the Sewerage & Water Board of New Orleans from disconnecting the sewerage system from plaintiffs’ property and from attempting to collect any charge from plaintiffs, and on the trial of the case on the merits, the Court recalled the injunction and rendered judgment on December 30, 1960, in favor of the defendant and against the plaintiff, Ernest J. Ka-bel, on defendant’s reconventional demand for $2,883.00 with interest and costs. The plaintiff, Ernest J. Kabel, has appealed.
Plaintiffs’ petition alleges that they are partners doing business as Kabel Super Market; that in connection with the erection of their building the Bureau of Public Health & Sanitation of New Orleans granted permission for the use of an individual sewerage disposal system, which plaintiffs installed according to requirements of said Bureau; that after the installation of that system the market operated the remainder of 1958, but a health permit for 1959 was denied them and the reason given was that connection with the main line of the Sewerage & Water Board of New Orleans sewerage system was available; that for some time the sewerage system main line lay along General Meyer Avenue 75 feet from plaintiffs’ property on the opposite side of that avenue; that plaintiffs then made application to the Sewerage & Water Board for extension of the line to relators’ property, but the said Board refused to make the extension unless plaintiffs paid the cost, estimated to be $2,883.00; that plaintiffs were forced to post a surety bond binding themselves to pay the Sewerage & Water Board that amount within six months after October 21, 1958; that such charge is unconstitutional, and that plaintiffs are entitled to a mandatory injunction condemning the Sewerage & Water Board to allow the sewer extension to remain without pay, and a prohibitory injunction, prohibiting said Board from attempting to collect the money which plaintiffs had agreed to pay.
The answer of the defendant, for lack of information, generally denies the allegations of the petition with regard to the installation of the individual sewerage disposal system by plaintiffs; admits that its sewer line lay along General Meyer Avenue across said avenue about 75 feet from relators’ property; admits that defendant refused to make the extension of its main line across said avenue free, and alleging that plaintiffs cannot require said extension unless they agree to pay for it; that they *858 did agree to pay the estimated cost of the extension; that in lieu of cash defendant consented to accept a surety bond, which was given by plaintiff, Ernest J. Kabel, and upon the execution of such agreement to pay, the main sewer line extension to plaintiffs’ property has been made by defendant.
Assuming the position of plaintiff in re-convention, the defendant prays for judgment against the said Ernest J. Kabel on his contract and bond to pay defendant the sum of $2,883.00 in consideration for the extension of defendant’s sewer main to the property of plaintiffs.
Attached to defendant’s answer and offered in evidence (Sewerage & Water Board — 1) is a copy of a contract in authentic form executed by Ernest J. Kabel and the Sewerage & Water Board, wherein it is stipulated that the said Kabel desires to have the public sewerage system main extended across General Meyer Avenue from the south to the north side and connected with the Kabel property, for which “the said Kabel agrees and binds himself to pay to the Sewerage & Water Board the sum of $2,883.00 within a period of six months after date of this contract.” Attached to that document is a copy of the resolution of the Sewerage & Water Board authorizing the president to enter into the contract with Kabel to extend the sewer main in consideration of the obligation of Kabel to pay that amount.
Epitomizing the testimony taken both on the trial of the rule for a preliminary injunction and at the trial of the case on the merits, Ernest J. Kabel testified that he and his brother and sister operate the super market, which they built, on General Meyer Avenue in New Orleans. The permit of the City of New Orleans to build it was issued on March 13, 1958. Knowing that there was no sewer main on their side of General Meyer Avenue through which to make their sewage disposal, they obtained a permit from the City Bureau of Health to construct and use a septic tank. The Health Department wrote Kabel a letter dated October 22, 1958, saying that the permission to install the septic tank would be acceptable until such time as the municipal sewerage facilities are available. When Kabel applied for the health permit for the market for 1959 the Bureau of Health refused to issue the permit on the ground that the sewer main across General Meyer Avenue was considered available. (The main was in the same place when the septic tank was approved the previous year). Kabel then applied to the Sewerage & Water Board for an extension of its main across the avenue to the Kabel property. That Board refused to make the extension free and required him to pay $2,883.00. He said that in order to avoid great loss by having more than $100,000.00 worth of merchandise and fixtures idle he contracted to pay that amount and posted a surety bond to guarantee it.
Kabel testified that he did not apply to the Sewerage & Water Board to have the sewer line extended to the Kabel property before installing the septic tank, but instead he submitted his plans and specifications for his building, which included the lay-out for a septic tank, and the city and Health Board accepted and approved them. Then when he could not obtain a permit for 1959 from the City Board of Health to operate his business with the use of the septic tank he signed the contract to pay for the main line sewerage extension. He said at the bottom of page 9 of the testimony on the trial of the case on the merits: “If I had not signed the contract, I did not think the city would have issued a license to operate the establishment. * * * I was forced to sign the agreement.” He repeated that because he had $150,000.00 tied up in the business he was forced to agree to make the payment for the sewer extension.
The testimony for the defendant was given by John J. Porte, the assistant engineer of the Sewerage & Water Board of New Orleans, who said that he first received an inquiry from the Board of Health *859 asking if sewerage was available within 300 feet of plaintiffs’ property. Following that, there was a meeting of the Sewerage & Water Board and Health Department representatives at which meeting Mr. Kabel was present with his attorney, Mr. Comiskey. At this meeting the matter of sewer line extension was discussed and this discussion resulted in the contract and bond given by Kabel to have the work done. Mr. Porte explained that General Meyer Avenue was a state highway and permission of the State Highway Department had to be obtained to put the line across it; that the Highway Department would not allow the pavement to be cut and in order to extend the main across that street to the Kabel property the line had to be put under the pavement which was not the case in crossing ordinary streets. Mr. Porte further explained that the Sewerage & Water Board has a rule that if property in a locality is 50% improved or “built up” the Board will make the sewer main extension at its own cost in order to make the system available, but that the Board will not make extensions free for individual connections.
Counsel for plaintiffs argues that LSA-R.S. 33:4090 requires of the defendant that “All connections with the sewerage and water mains shall be made at the cost of the board from the mains to the edge of the foundations of the buildings on the property line, or if there are no foundations on the property line, then to the property line itself, and from that point on, they shall be made at the cost and expense of the owner of the property.”
While that provision of the law is positive, our courts have not required the Sewerage & Water Board of New Orleans to extend its main in order to reach a property with which the connection is to be made, where such refusal to make such extension is not unreasonable and arbitrary, and demands for contributions towards the cost of such extension have been upheld. Eastern Gentilly Civic Ass’n. v. New Orleans S. & W. Bd., La.App., 127 So.2d 788; Jacobi v. Sewerage & Water Board, La.App., 119 So.2d 158; State ex rel. Holifield v. Sewerage & Water Board of New Orleans, La.App,. 108 So.2d 277.
With these rulings in mind, we then advert to the question as to whether the demand here is reasonable and not arbitrary. There are circumstances in this case which enlist our interest with some degree of sympathy toward the plaintiffs. Knowing that the sewer main was across a state highway from the Kabel property, the plaintiffs submitted plans for the installation of an individual disposal system commonly called a septic tank. The plans were approved by the City of New Orleans, and the Health Bureau gave its permission for the installation and use of a septic tank which was constructed at considerable cost. This was in 1958. The director of that Bureau inspected the system after its construction, accepted it and authorized that it be covered with backfill. See the letter of October 22, 1958, P-4. This installation cost the plaintiffs $1,200.00 or more. Then within less than three months time, without any change in the circumstances, the Health Bureau refused to renew the permit for 1959. However, we cannot lose sight of the fact that the present controversy is with the Sewerage & Water Board and not with the Health Bureau. Another circumstance we have considered is that in making the extension of the sewer main, the distance of 75 feet to the property of plaintiffs, the defendant installed an 8 inch main which Mr. Porte admitted was larger than would have been necessary to fill the needs of the Kabel connections and that since this extension was made the defendant has further extended the main to and connected with other properties free of any contribution from respective property owners. Whether these other extensions were to new constructions the evidence does not show. On the other side of the picture, the contract by Kabel to pay for the Kabel extension fixes the amount at $2,883.00. The actual cost of the extension was $4,440.-00. While the evidence does not touch upon it, we assume that to some extent at least this additional cost takes care of the over *860 size pipe installed beyond the needs of the plaintiffs.
It is further explained by Mr. Porte that along a major state highway, such as General Meyer Avenue, it is necessary to lay the sewer main on both sides to make it available to property fronting on each side, because the State Highway Department will not permit individual or temporary lines to be laid across the highway to reach property on the opposite side. Therefore, the sewer main across the highway from the Kabel property was not considered as being in front of the Kabel property, as it would have been along an ordinary street not in the state highway system. Under these circumstances, we conclude that the Kabel property did not front on the sewer main so as to make the property entitled to a free connection by the Sewerage & Water Board and what was done amounted to an extension of the sewer main rather than a sewer connection as contemplated in the language of LSA-R.S. 33:4090 quoted above. We hold that the demand by defendant for the contribution toward the expense of this extension is not unreasonable or arbitrary.
Counsel alleges and argues that this extra assessment of a money contribution to induce defendant to extend the sewerage system violates that part of see. 23.3, Art. XIV, of our Constitution, LSA, which authorizes the Sewerage & Water Board of New Orleans to “ * * * fix the rates to be charged private consumers of water * * And that such charges “ * * * shall be framed so as to cover the actual cost of maintenance and operation of the public water system, * * * maintenance and operation of the public sewerage system, the cost of extensions, repairs and better-ments to both systems * * It will be noted that in the first line of that section of the Constitution, the Sewerage & Water Board is not required to fix mater rates, but instead the word “may” is used, and further, in the sentence beginning at the bottom of the first page of that section, the language which says that: “These charges [meaning water rates] * * * shall be framed so as to cover the actual cost * * * ” of sewerage extensions, was changed by an amendment adopted at the general election on November 4, 1958, to read: “ * * * shall be framed so as to never exceed the actual cost * * and so forth, as quoted first above. We say, en passant, that any question about whether the contribution demanded of these plaintiffs is unconstitutional would depend on whether the defendant herein has fixed and collects water rates and if so the sufficiency thereof and cannot be the subject of any inquiry by this Court in this case for the reason that there is not a word of testimony in regard to it.
There is no merit in counsel’s argument that plaintiff Kabel was forced to agree to pay $2,883.00 to defendant to make the sewer main extension and that he agreed to make the payment and signed the contract under duress. The only allegation in the petition on the subject of duress is in Article X, where it is alleged that an application was made to the Sewerage & Water Board for a sewer connection “ * * * which was refused and relators were forced to post a bond * *
 That allegation is merely a conclusion of law and is not sufficient to serve as the basis for the introduction of testimony to prove duress, but plaintiff Ernest J. Kabel was permitted to make the statements referred to hereinabove about being forced to sign, without objection from defendant. Mr. Kabel does not explain in what manner he was forced to make an agreement, but intimates that the alternative would have been money or property loss. There is no evidence of threats or violence, arrest or coercion of any kind. As evidence that his agreement was entirely voluntary, it is noted that at the conference with the Sewerage & Water Board representatives when the agreement was made and later when it was reduced to writing and signed, Mr. Kabel was accompanied by his attorney and that his attorney signed the contract as one of the subscribing witnesses. If there *861 had been any discussion at that conference which could be termed coercion or duress it seems reasonable that there would have been some offer to prove it. Circumstances will not be considered as having coercive effect on a person’s course of action when there are other courses which were open for that person to follow or employ to accomplish the desired result. Here the desired result was not to obtain a connection with the public sewerage system, but the prime purpose Kabel had in mind was to have the City Bureau of Health issue to him a permit to operate his business for 1959. The matter of his right to such a permit without any payment could have been tested by civil action against the said Health Bureau as easily as the plaintiffs have brought this present suit against the Sewerage & Water Board, and with much more hope of success. The situation, it appears, was just about perfect for an action for a declaratory judgment. There would have been some equities in plaintiffs’ favor in connection with either a mandatory injunction suit or for a declaratory judgment against the city for such a permit. There are several other actions which come to mind which plaintiffs could have employed before this contract was signed, but the voluntary agreement to pay for the sewerage extension has closed the door to all of them.
There is a full discussion of the subject of duress found in the decision of our Supreme Court in New Orleans & N. E. R. Co. v. Louisiana Const. & Imp. Co., 109 La. 13, 33 So. 51, where under certain ordinances of the City of New Orleans the Mayor farmed out or leased its wharves and landings by contract for terms of years. Such a contract was made with defendant and the controversy arose over the interpretation of the ordinances and the contract and the plaintiff by that suit sought to recover payments made by the plaintiff in connection with the construction of new wharves by the plaintiff, and the amount of wharf dues. The plaintiff alleged that demands made upon it and that the payments it made were illegal. The idea mainly was whether such payments were voluntary or made under such circumstances as to constitute involuntary agreements and payments. That is the exact position taken by plaintiffs in this case now before the Court.
In the decision referred to quite a few Louisiana and out of state authorities are cited. The discussion stems around the contention that a party who has paid voluntarily under a claim of right could not afterwards recover back the money, although he protested at the time against liability. This is particularly true, the court says, when the complaining party delayed making his defense or asserting his rights and entered into agreements which he wants set aside or made payments which he later seeks to recover. I quote the following pertinent portions of the cited decision:
“On this review of the situation the question recurs has plaintiff a cause of action? It is elementary that a voluntary payment of money under a claim of right cannot, in general, be recovered back. The question narrows to what is in law a voluntary payment. The distinction to be made between payments voluntary and payments under duress has been a fruitful theme of discussion in the courts. Where the parties were not on equal terms; where the payer had no choice; where the only alternative was to submit to an illegal exaction or discontinue business — these and other like circumstances evidencing pressure or duress under which money or other value is parted with have never been regarded as embraced within the rule of voluntary acts within the meaning of the maxim ‘Volenti non fit injuria.’ Swift Co. v. U. S., 111 U.S. [22,] 28, 4 Sup.Ct. 244, 28 L.Ed. 341. But where dispute arises and the debtor, who pays under protest, has at hand other means of immediate relief than by making the payment, his act is not one done under coercion and his protest does not take the case out of the category of voluntary payment. Radich v. Hutchins, 95 U.S. 210, 213, 24 L.Ed. *862 409. * * * ‘If the violence used be only a legal constraint/ declares Civ. Code art. 1856, ‘or the threats only of doing that which the party using them had a right to do, they shall not invalidate the contract. A just and legal imprisonment, or threats of any measure authorized by law and by the circumstances of the case, are of this description.’ In Benson v. Monroe, 7 Cush. 125 [61 Mass. 125], 54 Am.Dec. 716, where a vessel was taken into custody for debt and where the facts and equities made out a strong case for the recovery back of the money (a large sum) paid under protest in order to release the vessel, the defense was voluntary payment by a person who was given a chance to have his day in court on the legality of the demand on which the attachment was based and did not use his opportunity to defend. This defense was sustained, the supreme court of Massachusetts saying: — ‘The court deem this a plain case. It is an established rule of law that if a party, with a full knowledge of the facts, voluntarily pays a demand unjustly made on him and attempted to be enforced by legal proceedings, he cannot recover back the money, as paid by compulsion, unless there be fraud in the party enforcing the claim and a knowledge that the claim is unjust. And the case is not altered by the fact that the party, so paying, protests that he is not answerable and gives notice that he will bring an action to recover the money back. Pie has an opportunity, in the first instance, to contest the claim at law. He has, or may have, a day in court; he may plead and make proof that the claim on him is such as he is not'bound to pay. * * * The party has an option whether to litigate the question, or submit to the demand and pay the money.’ Numerous authorities support the doctrine of that case. In the case at bar there was every opportunity to litigate the question raised in a court of competent jurisdiction at the very time it was first raised.” See Jung v. Gwin, 174 La. 111, 139 So. 774; Carey v. Commonwealth Building & Loan Ass’n, 145 La. 1, 81 So. 734; Thompson v. Albanese, La.App., 120 So.2d 860; Quaintance v. Cook, La.App., 92 So.2d 504; 17A Am.Jur. pp. 559, 585, 596.
In the case before us, no money has been paid, but the plaintiffs agreed to pay it and one of them executed a solemn written obligation to pay it. The plaintiffs are in no better position than they would have been had they paid the cash instead.
The decision of the trial court is affirmed, with costs to be paid by defendant in re-convention, Ernest J. Kabel.
Judgment affirmed.