673 So.2d 227 (1996)
ANNE LIND & ASSOCIATES
v.
ORLEANS PRIVATE INDUSTRY COUNCIL.
No. 95-CA-0462.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1996.
Rehearing Denied May 31, 1996.
*229 Henry W. Kinney, John W. Ellinghausen, Kinney & Ellinghausen, New Orleans, for Appellant.
Docia L. Dalby, D. Roxanne Perkins, Rice, Fowler, New Orleans, for Appellee.
Before KLEES, LOBRANO, ARMSTRONG, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.

I. Background & Reasons for Judgment
Plaintiff appeals from a January 17, 1995 judgment of the district court granting defendant's exception of prematurity and dismissing plaintiff's case without prejudice. The trial court rendered the following written reasons for judgment:
This matter came before the court on December 16, 1994 on several exceptions filed by the defendant, Orleans Private Industry Council. Following oral argument, the court took the exceptions under advisement.
Defendant, Orleans Private Industry Council (hereinafter OPIC) argues that the Exceptions ... should be maintained because pursuant to the Federal Job Training Partnership Act and the Louisiana Procurement Code, plaintiff must follow the applicable administrative procedure prior to filing suit.
Plaintiff, Anne Lind & Associates argues that contrary to OPIC's assertions, it is not alleging a violation of the Job Training Partnership Act (JTPA) and the Louisiana Procurement Code does not apply.
The court disagrees with plaintiff's position and concludes that regardless of how plaintiff styles its complaint, the Job Training Partnership Act applies and as such, plaintiff is required to exhaust all administrative remedies prior to filing suit. The court reaches this conclusion for the following reasons:
The initial "Request for Proposals" which was published in the Times-Picayunne on May 27, 1993 stated that defendant was seeking bids for "software to be used in computer labs for instruction in the SDA 12 Job Training Partnership Program". Therefore, from the beginning of the process plaintiff knew or should have known that the service solicited fell within JTPA. Consequently, any regulations and procedures were also governed by the Act and any other state or local regulations the Act permitted a state or local Service Delivery Area to promulgate.
This is a case where defendant, OPIC solicited bids for service providers and is not under their notion of a funded program. However, it is clear from the request for solicitation of bids that the bid process, including the award would be governed by the JTPA.

*230 The Louisiana Administrative Code requires that each Service Delivery Area ("SDA") (such as OPIC), grant recipient and its sub-recipients process grievance procedures in compliance with 20 CFR, part 627, sub-part E, which specifically provides:
[T]hat ... nothing in the act or this chapter shall: 1) allow any person or organization to file a suit which alleges a violation of JTPA or regulations promulgated thereunder without first exhausting the administrative remedies described in this sub-part; or 2) be construed to create a private right of action with respect to alleged violations of JTPA or the regulations promulgated thereunder. (Emphasis Added) 20 CFR 627.5(c)
Section 627.501 of 20 CFR sets forth the state grievance and hearing procedures for non-criminal complaints at the recipient (the state) level. That regulation provides that:
(a)(1) each recipient shall maintain a recipient level grievance procedure and shall ensure the establishment of procedures at the SDA level (OPIC) and the SSG level for resolving any complaint alleging a violation of the Act, regulations promulgated thereunder, grants, or other agreements under the Act. The procedures shall include procedures for the handling of complaints and grievances arising in connection with JTPA programs operated by each SDA, SSG and sub-recipient under the Act.
The state (the recipient) has in place the required general grievance and hearing procedures. Section 103 of the General Grievance and Hearing Procedures states:
A. Grievances arising at the SDA level (including OPIC, grant recipient, administrative entity, as well as service providers) must first exhaust available remedies and procedures at that level prior to being subject to state review.
B. If a complainant does not receive a decision at the SDA grant recipient level within sixty (60) days of the filing of the complaint or receives a decision unsatisfactory to the complainant, then the complainant has a right to request a review of the complaint by the Governor. The request for review should be submitted to the Secretary, Louisiana Department of Employment and Training, or his or her designee, shall act as the Governor's authorized representative pursuant to LSA-R.S. 23:2022. The request for review shall be filed within ten (10) days from the date on which the complainant should have received the decision. The Governor will conduct a review of the complaint and issue a decision within thirty (30) days from the date of receipt of the review request. The decision rendered by the Governor will be final.
As required by the state, OPIC has a funding appeals process which requires any dissatisfied vendor to request reconsideration of its proposal within 10 days of the date of non-funding notice. After the request, a formal fact-finding meeting is held. The President of OPIC renders a formal decision which can be appealed to the Program Committee for reconsideration and recommendation to OPIC's Board of Directors. Proposers may then submit complaints to the Louisiana Department of Labor.
In the present case, plaintiff has not exhausted all of the above administrative remedies. Therefore, this suit is premature and must be dismissed without prejudice.

II. Specifications of Error
Appellant argues:
1. the trial court erred in finding that plaintiff's suit was premature because she had not exhausted all of her administrative remedies; and
2. the trial court erred in finding the Louisiana Public Bid law and "the Charter of the City of New Orleans" inapplicable in the instant case, such that plaintiff's claim must be adjudicated through administrative procedures before suit can be filed.

III. Examination of Plaintiff's Petition
An examination of plaintiff's petition reveals that multiple causes of action have been *231 advanced. Plaintiff alleges violations of the public bid laws of the State of Louisiana R.S. 38:2211, et seq., the procurement laws and the ethics laws of the state of Louisiana. Implicit in plaintiff's statement of the facts in her petition are violations of the Job Training Partnership Act. Plaintiff also attempted to utilize grievance procedures under the JTPA. Lastly, plaintiff alleges violations of "the Procurement Provisions of the Charter of the City of New Orleans", described in her appellate brief as Section 6-307 of the City of New Orleans Home Rule Charter. Although the judgment dismisses the entire case, the reasons for judgment make no substantive reference to any cause of action other than the JTPA allegations.
Council for OPIC stated at oral argument that the trial court immediately recognized that the ethics cause of action was final and that she had no jurisdiction over that matter and that the ethics issue is "dead". We do not have a transcript indicating such a statement by the trial court, nor do we have a different judgment from the one appealed dismissing an ethics action, nor is the ethics issue discussed in the instant reasons for judgment. Appeals are not taken from reasons for judgment, however, but from the judgments themselves. Because the trial court has dismissed the entire case, it is presumed that she has dismissed those additional causes of action also under the exception of prematurity.

IV. The Nature of OPIC
Our initial inquiry is what kind of creature is the Orleans Private Industry Council? Is it a state agency, a political subdivision, a public entity, a private corporation, a political or public corporation, or a procurement unit?
An examination of the attributes of the Orleans Private Industry Council is appropriate. It is created by city government, as opposed to creation by private persons. The Mayor of the City of New Orleans appoints all of the Board members. One hundred percent of its funds come from government. Specifically, the funds come from the Federal government to the Governor of the State of Louisiana, who has appointed the Department of Labor his designee who then transmits the funds to the Mayor of the City of New Orleans who forwards them to the Orleans Private Industry Council. The OPIC employees are considered public employees and are bound by the rules and regulations pertaining thereto. OPIC holds itself out as a public entity. In addition, OPIC has the power to sue and be sued on its own.
The ability to sue and be sued on one's own is known as the power corporate and is a distinguishing feature of a corporation or body corporate. In National Bank of Commerce in New Orleans v. Board of Sup'rs of Louisiana State University and Agricultural and Mechanical College, 206 La. 913, 20 So.2d 264 (La.1944) the Supreme Court stated:
In Act No. 145 of 1876, as well as in Act No. 7 of the Extra Session of 1921, it is specifically stated that the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College "shall be a body corporate * * * with the right, as such, to use the common seal * * * and to sue and be sued in courts of justice, and in general to do all acts for the benefit of the Louisiana State University and Agricultural and Mechanical College, which are incident to bodies corporate." Unquestionably, it is a public board, a political or public corporation, as those terms are used in Act No. 6 of the Second Extra Session of 1935. The University was created by the State for public purposes specifically mentioned in the act of 1876. The members of the Board of Supervisors appointed by the Governor are officers and are commissioned and hold their offices until their successors are appointed and qualified. The Constitution authorizes the State to organize and maintain a system of public education, and the purpose of creating the Louisiana State University was to educate and train the youth of the Statea governmental function. Certainly it is not a private corporation.
"The distinction between public and private corporations has reference to their powers and the purposes of their creation. They are public when created for public *232 purposes only, connected with the administration of the government, and where the whole interest and franchises are the exclusive property and domain of the government itself." See "Corporations", 7 R.C.L., Section 14, page 40.
(At 929-930, 20 So.2d at 269.) (Emphasis added).
Political Corporations Under Louisiana Law by Robert H. Marr (Publ. F.F. Hansell & Bro., Ltd. & Search & Pfaff, Ltd., New Orleans 1935) discusses the distinctions between different governmental entities.
Section 2. Political Corporations defined Political corporations are those which have principally for their object the administration of a portion of the State, and to which a part of the powers of government is delegated to that effect. State ex rel Board v. Michel, 127 La. 685, 53 So. 926; Art.IV, Sec.6[1] Corporations, legally established, are substituted for persons, and their union which renders to all those who compose their interests, their rights and their privileges, is the reason why they are considered as one single whole. Hence they may possess an estate, have a common treasury for the deposit of their money; may receive legacies and donations; may make valid contracts; obligate others and obligate themselves; exercise the rights which belong to them; manage their own affairs; appear in court of justice, and even enact statutes and regulations for their own government, not contrary to law.
In a generic sense the term "municipal corporation" is often used as synonymous with "political corporation", and, in that sense, is a body corporate and politic, established by law to share in the civil government of the country, but chiefly to regulate and administer the local and internal affairs of the city, town, or district incorporated, for example, of a parish; its nature is such that it, of necessity, represents all the citizens of the territory or district submitted to its jurisdiction by classes, as well as collectively, hence an ordinance of the police jury based on a confession of judgment is binding on each individual taxpayer.
A political corporation is only a government functionary, and it has no vested rights protected by the Constitution; hence a constitutional amendment regularly submitted and adopted may withdraw a privilege granted by the Constitution. Middleton v. Police Jury, 169 La. 458, 125 So. 447.
In relation to the powers of political corporations, the provisions of our Code have no room for doubt. That the powers of those charged with the local government of the internal divisions of the State are merely administrative, except in cases in which express authority is given by law, is a proposition which must command universal assent from those who understand our political system. Louisiana State Bank v. Orleans Nav. Co., 3 La.Ann. 294. A "public corporation" is one created by political purposes, with political powers to be exercised for the public good in the administration of civil government, subject to the control of the Legislature, and its officers are officers of government for the administration and discharge of public duties, whose misconduct may be cause for removal in a proper proceeding ... Political corporations may settle and compromise disputed claims in favor of or against them, before or after suit is filed, such power being implied in the capacity to sue or be sued. Orleans Levee Bd. v. Blythe, 163 La. 929, 113 So. 150.
Public boards, being mere State agencies, are without authority to grant gratuitous compensation to contractors ...
Political corporations, in the same way as private corporations, ought to be sued in their corporate name, and the citation ought to be addressed to them, and not to their presidents ...
(At 3-5.)
In contrast to political or public corporations which are sued in their own name and have the ability to sue and be sued on their *233 own, separate and distinct from the State, LSA-R.S. 13:5107 requires that where there is a suit against a State agency, citation is made upon the Attorney General, the chief legal advisor of the State, and upon the head of the State agency. In contrast to political or public corporations, state agencies cannot settle litigation in the absence of express authority. Accordingly, in 1992 the legislature gave state agencies express authority to settle claims, but only upon the advice and with the concurrence of the Attorney General. Act No. 77, Regular Session of 1992; LSA-R.S. 13:5109(A). While the proper caption of a suit against a political corporation is just the name of the corporation, the proper caption of a suit against a state agency is "State of Louisiana, Department of ..." because the true defendant is the State itself.
Only private or public corporations have the power to sue and be sued independently. OPIC is not a private corporation because of its funding and creators. Accordingly, we conclude that OPIC is a public corporation.

V. JTPA as an Exclusive Remedy
The Job Training Partnership Act creates several methods for the handling of complaints.
Discrimination complaints are handled by a separate and distinct apparatus outside of the Act. 29 CFR 34.1 et seq.
Complaints of criminal violations of the JTPA are directly reported to the Department of Labor, Office of Inspector General, Office of Investigations or to the Regional Inspector General. 20 CFR 627.500(c).
Where the complaint is of a non-criminal violation, numerous dispute resolution procedures are available under the Act. The Act further provides that each of the following must have grievance procedures which provide for "written notice to interested parties of the date, time, and place of the hearing; an opportunity to present evidence; and a written decision.":
1. The Federal Secretary of Labor (20 CFR 627.600)
2. The Governor of the State of Louisiana (20 CFR 627.607)
3. The State of Louisiana (20 CFR 627.501)
4. OPIC (20 CFR 627.502)
5. For profit corporations or businesses who are participants (20 CFR 627.504)
The Act also provides:
This subpart establishes the procedures which apply to the handling of noncriminal complaints under the Act at the Governor, the SDA, and the SSG levels. Nothing contained in this subpart shall be deemed to prejudice the separate exercise of other legal rights in pursuit of remedies and sanctions available outside the Act.
Accordingly, by the clear and express language of the act, plaintiff is correct when she argues that utilization of the JTPA grievance procedures does not foreclose other legal remedies available to her under applicable law such as public bid laws or ethics regulations.

VI. JTPA Violations
Turning to the JTPA allegations, plaintiff argues that she attempted to comply with the grievance procedures, but that OPIC will not set a hearing date for her appeal. Plaintiff is not at OPIC's mercy. 20 CFR 627.502 requires:
(a) Each SDA (OPIC) and SSG, pursuant to guidelines established by the recipient (the State), shall establish procedures for resolving complaints and grievances arising in connection with JTPA programs operated by the SDA (OPIC) ... The procedures also shall provide for resolution of complaints arising from actions taken by the SDA(OPIC) ... with respect to ... contractors
(b) Each SDA (OPIC) grievance hearing procedure shall include written notice of the date, time, and place of the hearing; an opportunity to present evidence; a written decision; and a notice of appeal rights. (c) The SDA (OPIC) and SSG procedures shall provide for a decision within 60 days of the filing of the complaint.
20 CFR 627.503 provides:
(a) If a complainant ... receives (at the SDA (OPIC) level) a decision unsatisfactory to the complainant, the complainant *234 shall have the right to request a review of the complaint by the recipient (the State). The recipient shall issue a decision within 30 days of receipt of the complaint.
(c) A request for review under the provisions of paragraphs (a) or (b) of this section shall be filed within 10 days of receipt of the adverse decision or, if no timely decision is rendered, within 15 days from the date on which the complainant should have received a timely decision.
* * * * * *
(d) ... the recipient's decision is final unless the Secretary exercises the authority for Federal-level review in accordance with the provisions at s 627.601 of this part, Complaints and grievances at the Federal level.
Thus under the federal regulations, OPIC holds a hearing, issues a decision and an aggrieved party can appeal to the State. The OPIC procedures, however, have added another level of review. Under the OPIC Funding Appeal Process, the aggrieved party must appeal the OPIC decision to the Program Committee, who may hold a hearing and review the matter. The full Private Industry Council then votes to either accept or reject the Committee's recommendation. OPIC has not set a date for the Program Committee hearing for over six months, due to the illness of one of the members of the Program Committee. Even if we were to find the Program Committee review and PIC vote procedure valid, under 20 CFR 627.502(c) all of that must be accomplished within 60 days. Additionally, Sec. 101 (C) of the General Grievance and Hearing Procedures requires "Complaints from bidders not selected during competitive procurement must be first addressed by any administrative dispute resolution procedures established by the SDA (OPIC). Accordingly plaintiff argues that she is precluded from State review until the OPIC Program Committee hearing, recommendation, and full vote of the PIC and that OPIC refuses to hold the hearing. We agree with plaintiff's argument that the clear import of the OPIC regulations creates another level of review prior to state review. Plaintiff argues that she should not be compelled to proceed through the OPIC grievance procedures because it is "a vain and useless act" because:
1. she already knows how OPIC is going to rule because they issued the first adverse ruling
2. she has not sued under the JTPA (Discussed above).
3. she argues that despite the language of the regulation the recipients ruling cannot be final because it would be an unconstitutional denial of the access to courts, however, if a court finds otherwise, then the administrative ruling would nullify her civil suit.
Plaintiff argues that it is a vain and useless act and that she knows how OPIC is going to rule because they have already ruled against her once and because OPIC is both a litigant and the hearing officer under the regulations. In the past this court has heard similar arguments such as litigants should not have to go to the medical malpractice review panel, for example, because the majority of the members of the panel are doctors and they will automatically side with the doctor accused of the malpractice. That is a fallacious argument with respect to the malpractice panel, which has repeatedly shown this court that it does not always side with the doctor. But, there is an important distinction between the medical malpractice panel and the OPIC Funding Appeals Process in this case. In the medical malpractice review panel, the accused doctor is not sitting on the panel as one of the "judges". In the instant case, the same OPIC officers and employees who made the initial decision sit on the review panel. In essence, they review their own actions. In Bazley v. Tortorich, 397 So.2d 475, 485 (La.1981) our Supreme Court stated:
The state constitutional guarantee of access to courts is Article I Section 22 of the Louisiana Constitution, which reads:
"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him and his person, property, reputation, or other rights."

*235 This provision, like the Fourteenth Amendment to the United States Constitution, protects an individual's access to the judicial process. Where access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not totally arbitrary. (Citations omitted).
Plaintiff further argues that pursuit of the administrative process is "vain and useless" because under the regulations, the administrative decision is a final one not appealable to the district courts.
We find that the system used by OPIC is totally arbitrary and when combined with an unappealable final judgment constitutes a violation of the State of Louisiana's Constitution, specifically the constitutionally guaranteed right of access to the courts under Article 1 Section 22. Because we find OPIC's Program Committee review procedure to be invalid, plaintiff now has a right to proceed to the State level under 20 CFR 627.503
Because we find the OPIC Program Committee review procedure unconstitutional and plaintiff is now able to go directly to the State administrative appeal, plaintiff's JTPA claims are premature in light of her now available administrative appeal. Accordingly, we affirm that portion of the judgment finding dismissing the JTPA claims as premature.
The trial court failed to address plaintiffs other claims. Under the specific language of the Act, remedies and sanctions available outside of the Act may still be pursued independently of the JTPA procedures. 20 CFR 627.500(d) provides:
Whenever any person ... believes that ... an SDA ... has engaged in conduct the violates the Act and that such conduct also violates ... a State or local law, that person... may, with respect to the non-JTPA cause of action, institute a civil action or pursue other remedies authorized under such other ... State, or local law against the ... SDA ... without first exhausting the remedies in this subpart. Nothing in the Act or this chapter shall:
(1) Allow any person or organization to file a suit which alleges a violation of JTPA or regulations promulgated thereunder without first exhausting the administrative remedies described in this subpart;
Thus, plaintiff's public bid, procurement, City Charter and ethics allegations can be pursued independent of the JTPA action. Accordingly, we will review the trial judge's dismissal of those actions as premature.

VII. Ethics Allegations
LSA-R.S. 42:1142 provides that ethics appeals are taken to the First Circuit Court of Appeal, thus the Civil District Court for the Parish of Orleans lacks jurisdiction to hear this claim. Accordingly, that portion of plaintiff's action appealing the ethics ruling is hereby transferred to the First Circuit Court of Appeal.

VIII. Data Processing Procurement Act
OPIC argues that even if state law is applied, computer purchases are not competitively bid under the Data Processing Procurement Act[2]. Part of that Act found at LSA-R.S. 39:199(D) provides that computer software need not be competitively bid:
Notwithstanding any other provisions of this Part, any agency may procure data processing software, software maintenance, and support services without the need for competitive bidding. Such procurement must have the written advance approval of the state central purchasing agency and shall not be for a price greater than the vendor's published price.
However, LSA-R.S. 39:196 provides that the Data Processing Procurement Act "shall be applicable to all state agencies in the executive branch, as defined in R.S. 39:2(1)". LSA-R.S. 39:2(1) provides:

*236 "Agency" means any state office, department, board, commission, institution, division, officer or other person, or functional group, heretofore existing or hereafter created, that is authorized to exercise, or that does exercise, any functions of the government of the state in the executive branch, but not any governing body or officer of any local government, or subdivision of the state, or any parochial officer who exercises functions coterminous with the municipality in which he performs those functions.
Does this statute apply to OPIC? As previously discussed, OPIC is not a State agency. In the JTPA statutory scheme, the state agency under LSA-R.S. 39:196 is the Department of Labor. OPIC is a creature of the Office of the Mayor of a municipality. While the statute is not 100% on point because OPIC is not a local governing body, the clear intent of the statute is to exclude parish and municipal entities. Accordingly, we find that OPIC is excluded from the Data Processing Procurement Act.

IX. Louisiana Procurement Code
LSA-R.S. 39:200(M) provides that the provisions of the Data Processing Procurement Act supersede specifications of any contradictory or conflicting provisions of the Louisiana Procurement Code.
The Louisiana Procurement Code is found at LSA-R.S. 39:1551 et seq. It creates a centralized state purchasing system for the executive branch of state government. There are numerous exemptions from the Code. Additionally, LSA-R.S. 39:1556(17) states "`Procurement' means the buying, purchasing, renting, leasing, or otherwise obtaining any supplies, services, or major repairs." The Procurement Code specifically does not apply to the legislative or judicial branches[3], to professional, personal, consulting or social service contracts[4], to construction contracts[5], to lawyers[6], architects, engineers, and landscape architects[7], to the governor's mansion and state capitol cafeteria[8], to products or services from the blind[9], to the prison enterprise system[10], to used agricultural and industrial equipment[11], to inmate canteens[12], and to modular housing for prison overcrowding, medical facilities, kitchens, and perimeter fencing purchased by the Department of Public Safety and Corrections[13].
The Procurement Code also states:
... except that this Chapter shall not apply to either grants or contracts between the state and its political subdivisions or other governments, except as provided in Part VII (Intergovernmental Relations). LSA-R.S. 39:1554(B).
The section on Intergovernmental Relations provides:
"Local public procurement unit" means any parish, city, town, governmental body, and any other subdivision of the state of public agency thereof, public authority, public educational, health, or other institution, and to the extent provided by law, any other entity which expends public funds for the acquisition or leasing of supplies, services, major repairs, and construction, and any nonprofit corporation operating a charitable hospital. LSA-R.S. 39:1701(3).
Prior to acquisition of the hardware, OPIC contacted the Director of State Purchasing about the Statewide Contract Management System under the Intergovernmental Cooperative Purchasing provisions of the Louisiana *237 Procurement Code. The Director of State Purchasing issued the following formal determination by state purchasing:
This is in response to the information you provided concerning utilization of the Statewide Contract Management System.
It appears that the Orleans Private Industry Council meets the requirements of a "local procurement unit", as defined by La.R.S. 39:1556(10) and La.R.S. 39:1701. Therefore, your council (is) hereby authorized to purchase through the Statewide Contract Management System.
If I can assist you further, please let me know.
PLEASE MAINTAIN THIS LETTER ON PERMANENT FILE FOR FUTURE REFERENCE.
 Sincerely,
 Virgie O. LeBlanc, C.P.P.O.
 Director of State Purchasing
Because OPIC is an "entity which expends public funds for the acquisition of supplies and services" it is clearly a Local Public Procurement Unit under the Procurement Code. It is also not a state agency under the Data Processing Procurement Act. It is clear from the language of the two Acts that the Data Processing Procurement Act was not intended to include municipalities and their creatures, whereas the Louisiana Procurement Code was specifically and expressly intended to include municipalities and their creatures. Accordingly, OPIC had the right to purchase its hardware through the Statewide Contract Management System operated under the Intergovernmental Cooperative Purchasing legislation. We do not find that there is a conflict between the Procurement Code and the Data Processing Procurement Act because under both schemes OPIC is not a state agency. Accordingly, LSA-R.S. 39:200(M) is not triggered.

X. Public Bid Law
LSA-R.S. 38:2211 provides:
(9) "Public contract" or "contract" means any contract awarded by any public entity for the making of any public works or for the purchase of any materials or supplies.
(10) "Public entity" means and includes the state of Louisiana, or any agency, board, commission, department, or public corporation of the state, created by the constitution or statute or pursuant thereto, or any political subdivision of the state, including but not limited to any political subdivision as defined in Article VI Section 44 of the Constitution of Louisiana, and any public school board, or any public officer whether or not an officer of a public corporation or political subdivision. "Public entity" shall not include a public body or officer where the particular transaction of the public body or officer is governed by the provisions of the model procurement code[14].
Article 6 Section 44 provides:
(2) "Political subdivision" means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions.
OPIC is not "a public corporation of the state" because it was not created by the state, it was created by the City. OPIC is, however, "a unit of local government authorized by law to perform governmental functions" under Article 6, Section 44 and thus a "political subdivision" under that Article. If, however, "the particular transaction" is covered by "the model procurement code", then the public bid law does not apply. Thus the crux of this matter is the issue: is the purchase of computer software governed by the provisions of the model procurement code? The model procurement code was enacted as the Louisiana Procurement Code at LSA-R.S. 39:1551 et seq. discussed above. We do not know, however, if the software required was available under the procurement code purchasing mechanism. This is an issue of fact not explored in the record before us. This court lacks the facts in the record to determine if the public bid law applies to the instant transaction. Under the *238 public bid law, plaintiffs remedy lies at LSA-R.S. 38:2220:
B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.
C. Where a judgment of nullity is rendered in any action brought by a district attorney or by the attorney general pursuant to Subsection B of this Section the district court may award a civil penalty not in excess of fifty thousand dollars against each offending member of the governing authority of the public entity who authorized the violation.
Thus if the public bid law applies, then the plaintiff correctly filed suit in district court and the trial court erred in granting the exception of prematurity on this issue. If, however, the public bid law does not apply and the Procurement Code applies, then plaintiff must first exhaust administrative remedies before seeking judicial review. Pacificorp Capital, Inc. v. State, 604 So.2d 710 (La.App. 1 Cir.1992), on subsequent appeal 620 So.2d 913 (La.App. 1 Cir.1993), writ denied 629 So.2d 351, such that the trial court correctly dismissed this issue on the exception of prematurity. Because we lack facts in the record to determine which law applies, we reverse the trial court on this issue and remand it to the trial court for a factual hearing on this issue.

XI. Home Rule Charter Allegation
Lastly, plaintiff argues that the trial court erred in dismissing his action under the Home Rule Charter of the City of New Orleans, specifically citing Section 6-307 which provides:
Except in the purchase of unique or noncompetitive articles, competitive bids shall be secured before any purchase by contract or otherwise, is made or before any contract is awarded for construction, alteration, repair or maintenance or for the rendering of any services to the City, other than professional services, and the purchase shall be made from or the contract shall be awarded to the lowest responsible bidder after advertisement prescribed by ordinance or by applicable State law.
There are not enough facts in the record to discern if the computer software was a unique or noncompetitive article. Accordingly, a factual hearing needs to be held on this issue.
Additional sections of the Home Rule Charter may also have bearing on this matter. With respect to the alleged ethics violation, Section 9-106(1) requires prior disclosure of a financial interest and recusation in the awarding of contracts and Section 9-309 states "No officer or employee of the City shall have a financial interest in any contract with the City."
Section 9-312 provides that "In all sales or purchases of property, the City may reserve the right to reject all bids".
Lastly, Section 9-306(1) mandates the Council by ordinance to provide for punishment of willful violation of any provisions of the Home Rule Charter, including presumably Sections 9-106(1) and 9-309 above. Under 9-306(1) "the punishment imposed shall not exceed maximum fines or terms of imprisonment which may be imposed by the Municipal Court of New Orleans as provided by applicable State law". R.S. 13:2500(C) provides:
The penalty which may be imposed for each violation of a municipal ordinance shall not exceed five hundred dollars or six months in jail, or both at the discretion of the court, and in default of the payment of the fine said violator may be sentenced to serve a period in jail for a term not to exceed an additional thirty days.

XII. Conclusion
For the reasons discussed, that portion of the judgment of the trial court dismissing plaintiff's JTPA suit without prejudice as premature is affirmed. The portion of the judgment of the trial court dismissing plaintiff's state law ethics appeal is reversed and *239 the matter is transferred to the First Circuit Court of Appeal. The portion of the judgment dismissing plaintiff's causes of action under the public bid laws of the State and the Home Rule Charter is reversed and those matters are remanded to the trial court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART & REVERSED IN PART.
LOBRANO, J., concurs.
ARMSTRONG, J., concurs in part and dissents in part.
LANDRIEU, J., concurs in the result.
LOBRANO, Judge, concurring.
I agree with the majority result.
ARMSTRONG, Judge, concurring in part and dissenting in part:
I would affirm the judgment of the trial court in all respects.
LANDRIEU, Judge, concurring in the result.
NOTES
[1] Constitutional references in the Marr treatise are to the Louisiana Constitution of 1921 unless otherwise specified.
[2] The Telecommunications Procurement by Political Subdivisions Act LSA-R.S. 38:2234 et seq. does not apply because the purchase at issue does not meet the definition of "Telecommunications equipment, systems, related services" specifically limited to the enumerated list at LSA-R.S. 38:2236(A)(1)(a)-(i).
[3] LSA-R.S. 39:1554(D)(2)
[4] LSA-R.S. 39:1494 et seq. and LSA-R.S. 39:1554(D)(1)(b)
[5] LSA-R.S. 39:1554(B) and LSA-R.S. 38:2181 et seq.
[6] LSA-R.S. 39:1554(D)(1)(a).
[7] LSA-R.S. 39:1554(B) and LSA-R.S. 38:2181 through LSA-R.S. 38:2301.
[8] LSA-R.S. 39:1554(C).
[9] LSA-R.S. 39:1554(D)(1)(d).
[10] LSA-R.S. 39:1554(G)(2).
[11] LSA-R.S. 39:1554(G)(2)(a).
[12] LSA-R.S. 39:1554(H).
[13] LSA-R.S. 39:1554(G)(1).
[14] Model Procurement Code refers to the Model Procurement Code by the National Association of State Purchasing Officers and the American Bar Association enacted in Louisiana as the Louisiana Procurement Code.