MONROE, J.
The sewerage and water board of New Orleans, and Martin Behrman and Charles J. Theard, citizens and taxpayers of said city, pray for a writ of mandamus to compel the Secretary of State to register and promulgate “Senate Bill No. 1,” of the second extra, session of the General Assembly of the year 1910. The Secretary of State admits that it is his duty to register and promulgate any statute legally enacted by the General Assembly and approved by the Governor. He further admits that, pursuant £o the proclamation of the Governor, the General Assembly, on November 28, 1910/ convened in extraordinary session and passed the “Senate Bill No. 1,” referred to in the petition, and that it was signed by the Lieutenant Governor and the Speaker of the House of Representatives and approved by the Governor. But he avers that said bill has not been passed according to the formalities prescribed by the Constitution, in that I it is a local and special law, within the mean *688 ing of articles 48, 49, and. 50 of the Constitution and was not preceded by the public notice required toy said article 50, and is therefore unconstitutional and void; and hence that there is not imposed on him any duty to register and promulgate it.
The facts to be considered are admitted, and are as follows, to wit:
In June, 1S99, the property taxpayers of New Orleans voted a special tax of two mills, for 43 years, for the establishment of a sewerage, water, and drainage system; and thereafter, at the extra session of 1899, the General Assembly passed a certain act (No. 6 of said extra session), the title of which reads, in part, as follows:
“An act to make effective the vote and levy of the special tax by the property taxpayers of the city of New Orleans, for water, sewerage and drainage purposes, by authorizing the capitalization of said tax by the issuance of fifty year bonds of the city of New Orleans, under certain conditions and with certain privileges and restrictions; providing for the payment of the principal and interest thereof, for the disposition of said bonds and the proceeds thereof, and defining the power and duties of the board of liquidation with reference thereto; by constituting and establishing a sewerage and water board for the city of New Orleans and defining its powers, duties, rights, and obligation with reference to the public, the city council, the board of liquidation and the drainage commission, and vice versa,” etc.
Section 35 of the act reads:
“That, as it is proposed to have this act ratified by an amendment to the Constitution, it is hereby specially declared to be the intent of this act, and of said ratifying constitutional amendment, that the General Assembly reserves the right and power to amend this act in any respect not violative of the conditions upon which the said special tax was voted by the property taxpayers of the city of New Orleans and not impairing the vested rights or the contract-rights of the holders of the bonds issued under ■its provisions.”
The constitutional amendment to which reference is thus made was proposed by Act No. 4 of the same extra session, and was adopted at the ensuing general election (in April, 1900) as follows:
“The special tax for public improvements, voted by the property taxpayers of the city of New Orleans on June 6, 1899, and levied by the city council, by ordinance No. 15,391, approved June 22, 1899, is hereby ratified and its validity shall never be questioned. The special act, adopted by the Legislature at the special session held on August 8, 1899, constituting the sewerage and water board of the city of New Orleans, authorizing the city of New Orleans to issue bonds, and providing the means to pay the principal and interest thereof, and for other purposes, cognate to the purposes of the special tax aforesaid, is hereby ratified and approved, specially including therein reserved legislative right to amend the same; and all provisions of the present Constitution in conflict with the provisions of this act, and with this amendment, are, to that extent and for that purpose only repealed.”
The act thus referred to has been amended, directly or indirectly, by the Acts Nos. Ill of 1902, 69 of 1904, 19 of 1906, 116 of 1908, and 23 of 1910, as, also, by constitutional amendment, ratifying the acts of 1906 and 1908. Nevertheless, there still seemed to be something required for the successful prosecution of the great public work that had been undertaken, and the matter was regarded as of such importance that, on November 16, 1910, the Governor issued his proclamation calling upon the General Assembly to convene in extraordinary session on November 28th, for the purpose of considering, among other designated objects, or subjects, the following, to wit:
“(2) The passage of such law, or laws, as may be necessary to regulate the power and duty of the board of liquidation of the city debt of New Orleans and of the council of the city of New Orleans in regard to the selection of a depository, or depositories, of the public improvement fund of the sewerage and water board, arising from the proceeds of the one per cent, debt tax, a special two mill tax, and from the sale of bonds, and, accordingly, to amend, modify or repeal Act No. 23 of 1910, or any other laws or parts of laws on the same subject-matter.”
Agreeably to the call so issued, the General Assembly convened, in extraordinary session, and passed the statute which relators are here seeking to have promulgated, and which reads, in part, as follows:
“That the board of liquidation * * * shall deposit'the public improvement fund, as constituted by the Act No. 6, of the Acts of 1899, the Act No, 19, of 1906, and the Act No. 116, of the *690 Acts of 1908 * * * and the proceeds of the new public improvement bond sales in such bank, or banks, domiciled in the city of New Orleans, as it may, by viva voce vote, elect, after the approval of the city council,” etc.
And there are other provisions concerning the sale of the bonds and the deposit of the proceeds, which need not be stated in detail; it being sufficient to say that the subject legislated upon is the same as that dealt with by Act No. 6 of 1899, and that the act in question operates an amendment, and hence falls within the language of that act reading:
“The General Assembly reserves the right and power to amend this act in any respect, not violative of the conditions upon which the said special tax was voted by the property taxpayers of the city of New Orleans and not impairing the vested rights or the contract rights of the holders of the bonds issued under its provisions.”
And of the amendment whereby the stipulation thus quoted was incorporated in the Constitution, and which reads (in part):
“The special act, adopted * * * at the special session held on August 8, 1899, * * * is hereby ratified and approved, specially including therein reserved legislative right to amend the same; and all provisions of the present Constitution in conflict with the provisions of this act, and with this amendment, are. to that extent and for that purpose only, repealed.”
As against this express grant of authority to the General Assembly to amend the particular act mentioned, the respondent invokes the provisions of articles 48, 49, and 50 of the Constitution. Article 48 prohibits the passing of any local or special laws on certain enumerated subjects. If, however, the subject dealt with in Act No. 6 of 1899 happened to be one of those thus enumerated, it is clear that, as the act itself is, in effect, incorporated in the Constitution, and the power to amend it is expressly granted, or reserved to the General Assembly, and all conflicting provisions of the Constitution are repealed, article 48 would be “to that extent and for that purpose” repealed. And the same thing may be said of article 49, which provides that:
“The General Assembly shall not indirectly enact special or local laws by the partial repeal of a general law,” etc.
Article 50 provides that:
“No local or special law shall be passed on any subject not enumerated in article 48, * * * unless notice of the intention to apply therefor shall have been published, without cost to the state, in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law and shall be published at least thirty days prior to the introduction into the General Assembly of such bill,” etc.
And it is contended that the act here in question is unconstitutional 'because the notice required by the above-quoted article was not given. But, as we have seen, the whole subject dealt with by the Act No. 6 of 1899, and the question of the amendment of that act, are removed from the dominion of articles 48, 49, and 50 of the Constitution by reason of the fact that they are, themselves, the subjects of special enactments, embodied, or practically embodied, in the Oonstitution, and which dominate, and are not dominated by, those articles. How can the General Assembly, for instance, be expected to publish notice, without expense to the state, or to wait for such notice to be published, as a condition to its amending the act of 1899, when ,it has an express grant of authority to make such amendment, untrammeled 'by any condition, and when article 50, in so far as it might conflict therewith, is repealed.
Moreover, the Constitution (article 75) provides that:
“The Governor may, on extraordinary occasions, convene the General Assembly, at the seat of- government, or, if that should have become dangerous from an enemy or from an epidemic, at a different place. The power to legislate shall be limited to the objects specially enumerated in the proclamation convening such extraordinary session,” etc.
And it is evident that the power thus conferred on the Governor to convene the General Assembly, in order that it may legislate on matters of urgent necessity, and on the General Assembly so to legislate, is independent of the restriction imposed by *692 article 50 of the Constitution, since the necessity for immediate legislation which would justify the convening of the General Assembly in extraordinary session could not be expected to yield to the requirement that notice of the intention so to legislate should be published for 30 days, without expense to the state. Whether it would be competent for the General Assembly, convened in extraordinary session, to enact legislation absolutely prohibited by articles 48 and 49, if the subjects should have been designated in the proclamation of the Governor, is another question, which need not be now considered, "as the objection urged to the Senate Bill No. 1, which is the subject of this litigation, is not that it is prohibited legislation, but that the notice required by article 50 was not published.
For the reasons stated, our conclusion is that such notice was not required. It is therefore ordered, adjudged, and decreed that the judgment appealed from, whereby the mandamus prayed for was made peremptory, be now affirmed.