6 So.3d 124 (2008)
Elaine FRUGE
v.
BOARD OF TRUSTEES OF the LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM.
No. 2008-CA-1270.
Supreme Court of Louisiana.
December 2, 2008.
Rehearing Denied February 13, 2009.
*126 Roedel, Parson, Koch, Blanche, Balhoff & McCollister, C. Kevin Hayes, Carlton Jones, III, Baton Rouge, for appellant.
Lockwood & Rome, Thomas McCabe Lockwood, Baton Rouge, for appellee.
Mary Florence Quaid, Baton Rouge, Jerry Glen Jones, Jerry J. Guillot, Yolanda Johnson Dixon, Baton Rouge, and Alfred William Speer, II, for amicus curiae, Legislature of Louisiana.
Bradley Charles Myers and Donna Vandever Yelverton, Baton Rouge, amicus curiae, for Louisiana Municipal Association.
George R. Trelles, for amicus curiae, AFSCME AFL-CIO Louisiana Public Employees Council 17.
WEIMER, Justice.
This declaratory judgment action challenges the validity of 2002 1st Ex.Sess. La. Acts No. 165 ("Act 165"), which amended LSA-R.S. 11:416 and added LSA-R.S. 11:416.1, provisions of the Louisiana State Employees' Retirement System. The case is before us on direct appeal from a judgment declaring Act 165 unconstitutional on grounds that it was enacted in violation of La. Const. art. X, § 29(C), which requires that notice of any proposal to effect a change in any provisions of the public retirement system be published in the official state journal at least thirty days prior to introduction of the bill in the legislature.
After reviewing the record, the Act, and the constitutional provisions at issue, we find, contrary to the district court, that Act 165 does not suffer from a constitutional infirmity. The publication requirements of La. Const. art. X, § 29(C) apply only to bills introduced in regular sessions of the legislature and do not apply to bills introduced in an extraordinary session. Because Act 165 was introduced and enacted during the 2002 First Extraordinary Session, the Act was not subject to the publication requirements of La. Const. art. X, § 29(C). The judgment of the district court declaring Act 165 unconstitutional is therefore reversed.

BACKGROUND FACTS AND PROCEDURAL HISTORY
Prior to June 30, 2001, LSA-R.S. 11:416 offered retirees of the Louisiana State Employees' Retirement System ("LASERS") who chose to return to state employment certain options with respect to their benefits. During its 2001 Regular Session, the Louisiana legislature passed 2001 La. Acts No. 455 ("Act 455"), which became effective June 30, 2001. Act 455 amended LSA-R.S. 11:416 in several respects.
On March 19, 2002, Governor M.J. "Mike" Foster, Jr. issued Proclamation Number 11 MJF 2002, calling for an extraordinary session of the legislature to convene, beginning on March 25, 2002, for the purpose of legislating on certain specifically enumerated objects. Item 23 of the Proclamation listed as one of the enumerated objects: "To amend and reenact R.S. 11:416 relative to the Louisiana State Employees Retirement System to provide for the reemployment of retirees; and to otherwise provide relative thereto."
On March 26, 2002, House Bill 130 ("HB-130") of the 2002 First Extraordinary Session was introduced in the Louisiana House of Representatives. The stated purpose of the bill was "[t]o amend and reenact R.S. 11:416, relative to the Louisiana *127 State Employees Retirement System; to provide for the reemployment of retirees; to provide for the benefits paid to such retirees; to provide relative to accrual of credit for service; to provide for employer contributions; to provide an option for regaining membership in the system; to provide for reporting; to provide penalties for failure to report; to provide for retirees reemployed pursuant to Act No. 455 of the 2001 Regular Session of the Legislature and for employees who retired prior to the effective date of such Act; and to provide for related matters." The bill was passed by the legislature and enacted as Act 165 of the 2002 First Extraordinary Session. It became effective May 9, 2002, when Governor Foster failed to sign it within the delays allowed by law.
For the purposes of the instant matter, it is sufficient to note Act 165 changed provisions of Act 455. In addition, Act 165 enacted LSA-R.S. 11:416.1, which applies specifically to those retirees who retired and were rehired during the ten-month period Act 455 was in effect.
On March 5, 2007, this declaratory judgment action was instituted against the Board of Trustees of LASERS. The plaintiff, Elaine Fruge, is an employee of the Department of Corrections who retired on July 19, 2002, two months after the passage of Act 165, and who, as a result, was unable to avail herself of the benefits provided under LSA-R.S. 11:416 prior to its amendment and re-enactment by Act 165. Ms. Fruge's petition alleges that HB-130 (the bill which later became Act 165) was a proposal to effect a change in existing laws relating to the retirement system for public employees within the meaning of La. Const. art. X, § 29(C), and as such was subject to that constitutional provision's requirement that notice to introduce the proposal be published, without cost to the state, in the official state journal on two separate days, the last day being at least thirty days prior to introduction of the bill in the legislature. Ms. Fruge's petition avers that notice of an intention to introduce HB-130 was never published in any official state journal, and thus no thirty day delay occurred between publication of the notice and introduction of the bill on March 26, 2002. In addition, Ms. Fruge alleges that the legislation does not contain a recital that the publication requirements of La. Const. art. X, § 29(C) were met, all as required by the constitution. Accordingly, Ms. Fruge sought a declaratory judgment declaring Act 165 of the 2002 First Extraordinary Session unconstitutional. In addition, she sought a judgment declaring her immediate eligibility for the benefits provided under LSA-R.S. 11:416 prior to its amendment and re-enactment by Act 165.
Following the district court's overruling of a peremptory exception of no cause of action filed by LASERS, Ms. Fruge filed a motion for summary judgment in which she argued that Act 165 was enacted without complying with the notice and publication requirements of La. Const. art. X, § 29(C), and that the Act is therefore unconstitutional, null, void, and unenforceable. LASERS responded by filing a crossmotion for summary judgment, not disputing Ms. Fruge's contention of noncompliance with the provisions of La. Const. art. X, § 29(C), but asserting that those provisions do not apply to legislation such as HB-130 (the bill which later became Act 165), introduced during extraordinary sessions of the legislature.
After a hearing on March 24, 2008, the district court denied the motion for summary judgment filed by LASERS, and granted Ms. Fruge's motion for summary judgment, declaring Act 165 of the 2002 First Extraordinary Session unconstitutional on grounds that it was enacted without *128 complying with the notice, publication, and recital requirements of La. Const. art. X, § 29(C). Consistent with its findings, the district court signed a written judgment, dated May 14, 2008, in which it declared Act 165 of the 2002 First Extraordinary Session unconstitutional, null, void, and unenforceable, and decreed Ms. Fruge to be immediately eligible for the retire/rehire benefits provided under LSA-R.S. 11:416, as the statute existed prior to its amendment and re-enactment by Act 165.
LASERS suspensively appealed the district court judgment to this court, which has jurisdiction over the appeal pursuant to La. Const. art. V, § 5(D).[1]

LAW AND ANALYSIS

Principles of Review for Constitutionality
This court reviews judgments declaring a statute unconstitutional de novo. State v. All Property and Casualty Insurance Carriers Authorized and Licensed to do Business in State, 06-2030, p. 6 (La. 8/25/06), 937 So.2d 313, 319; Louisiana Municipal Association v. State, 04-0227, p. 45 (La.1/19/05), 893 So.2d 809, 842. In conjunction with this review, certain principles apply. As a general rule, statutes are presumed to be constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality. State v. Citizen, 04-1841, p. 11 (La.4/1/05), 898 So.2d 325, 334; Louisiana Municipal Association, 04-0227 at 45; 893 So.2d at 842; Board of Commissioners of North Lafourche Conservation, Levee and Drainage District v. Board of Commissioners of Atchafalaya Basin Levee District, 95-1353, pp. 3-4 (La.1/16/96), 666 So.2d 636, 639. Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. Louisiana Municipal Association, 04-0227 at 45, 893 So.2d at 842-843; Polk v. Edwards, 626 So.2d 1128, 1132 (La.1993); Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 286 (La. 1986). As a result, a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question. World Trade Center Taxing District v. All Taxpayers, Property Owners, 05-0374, p. 12 (La.6/29/05), 908 So.2d 623, 632; Caddo-Shreveport Sales and Use Tax Commission v. Office of Motor Vehicles Department of Public Safety and Corrections of the State, 97-2233, pp. 5-6 (La.4/14/98), 710 So.2d 776, 779; Polk, 626 So.2d at 1132. Finally, because it is presumed that the legislature acts within its constitutional authority in enacting legislation, this court must construe a statute so as to preserve its constitutionality when it is reasonable to do so. State v. Fleury, 01-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472; Moore v. Roemer, 567 So.2d 75, 78 (La.1990).

Constitutionality of Act 165
For purposes of the present challenge, the parties do not dispute that the notice, publication, and recital requirements of La. Const. art. X, § 29(C) were not satisfied prior to the introduction of HB-130 *129 during the 2002 First Extraordinary Session and that the only notice provided of the intent to introduce HB-130 was that contained in Proclamation No. 11 MJF 2002 calling for the extraordinary session. Given this admission, the issue presented for this court's resolution is whether the requirements of La. Const. art. X, § 29(C) apply to legislation, such as Act 165, enacted during extraordinary sessions of the legislature.[2]
Resolution of this issue hinges upon the interpretation and interplay of the following provisions of the Louisiana constitution:
La. Const. art. X, § 29(C) Retirement Systems; Change; Notice. No proposal to effect any change in existing laws or constitutional provisions relating to any retirement system for public employees shall be introduced in the legislature unless notice of intention to introduce the proposal has been published, without cost to the state, in the official state journal on two separate days. The last day of publication shall be at least thirty days before introduction of the bill. The notice shall state the substance of the contemplated law or proposal, and the bill shall contain a recital that the notice has been given.
La. Const. art. III, § 2. Sessions
....
(B) Extraordinary Session. The legislature may be convened at other times by the governor and shall be convened by the presiding officers of both houses upon written petition of a majority of the elected members of each house. The form of the petition shall be provided by law. At least five days prior to convening the legislature in extraordinary session, the governor or the presiding officers, as the case may be, shall issue a proclamation stating the objects of the session, the date on which it shall convene, and the number of days for which it is convened. The power to legislate shall be limited, under penalty of nullity, to the objects specifically enumerated in the proclamation. The session shall be limited to the number of days stated therein, which shall not exceed thirty calendar days.
(C) Emergency Session. The governor may convene the legislature in extraordinary session without prior notice or proclamation in the event of public emergency caused by epidemic, enemy attack, or public catastrophe.
Interpretation of these constitutional provisions is governed by well-settled rules of constitutional construction. As we have repeatedly explained, the starting point in the interpretation of constitutional provisions is the language of the constitution itself. Malone v. Shyne, 06-2190, p. 7 (La.9/13/06), 937 So.2d 343, 349; Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066, pp. 6-7 (La.7/6/04), 880 So.2d 1, 7. When a constitutional provision is clear and unambiguous, and its application does not lead to absurd consequences, its language must be given effect. Malone, 06-2190 at 7, 937 So.2d at 349; Ocean Energy, 04-0066 at 7, 880 So.2d at 7. Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words *130 their generally understood meaning. Malone, 06-2190 at 7, 937 So.2d at 349; Ocean Energy, 04-0066 at 7, 880 So.2d at 7.
While constitutional provisions should be construed so as to give effect to the purpose indicated by a fair interpretation of the language used, in the event of conflict or inconsistency, constitutional provisions should be construed, where possible, to allow each provision to stand and be given effect. Perschall v. State, 96-0322, p. 21-22 (La.7/1/97), 697 So.2d 240, 255. If one constitutional provision addresses a subject in general terms, and another addresses the same subject in more detailed terms, the two should be harmonized if possible, but if there is any conflict, the latter must prevail. Malone, 06-2190 at 7, 937 So.2d at 349; Ocean Energy, 04-0066 at 7, 880 So.2d at 7; Perschall, 96-0322 at 22, 697 So.2d at 255. Nevertheless, where the language of a constitutional provision makes its aim evident and unequivocal, courts need not consider the historical basis for the provision and may not, by separately considering related constitutional provisions, arrive at a construction that detracts from the effectiveness or manifest meaning and purpose of the related provisions. Malone, 06-2190 at 7, 937 So.2d at 349; Perschall, 96-0322 at 22; 697 So.2d at 256.
The wording of La. Const. art. X, § 29(C) is clear, unambiguous, and admits of no exceptions. It states, in pertinent part: "No proposal to effect any change in existing laws ... relating to any retirement system for public employees shall be introduced in the legislature unless notice of intention to introduce the proposal has been published ... in the official state journal on two separate days. The last day of publication shall be at least thirty days before introduction of the bill." (Emphasis added.)
However, Act 165, an act effecting a change in existing laws relating to the public retirement system, was enacted during an extraordinary session of the legislature, and the constitution contains its own specific notice provisions for legislation introduced during extraordinary sessions. In equally clear and unambiguous terms, La. Const. art. III, § 2(B) states, in pertinent part: "The legislature may be convened at other times by the governor.... At least five days prior to convening the legislature in extraordinary session, the governor ... shall issue a proclamation stating the objects of the session, the date on which it shall convene, and the number of days for which it is convened. The power to legislate shall be limited, under penalty of nullity, to the objects specifically enumerated in the proclamation. The session shall be limited to the number of days stated therein, which shall not exceed thirty calendar days." (Emphasis added.)
The enactment of Act 165 places in conflict the five day notice requirement for legislation introduced during extraordinary sessions, La. Const. art. III, § 2(B), and the longer, thirty day notice required for legislation relating to the retirement system for public employees, La. Const. art. X, § 29(C). Ms. Fruge argues, and the district court apparently concluded, that the thirty day notice requirement for public retirement system legislation can be reconciled with the five day notice requirement for legislation introduced during extraordinary sessions by recognizing that La. Const. art. III, § 2(B) requires that the governor issue the call for an extraordinary session "[a]t least five days prior to convening," and that, as a result, if legislation regarding a public retirement plan is to be included in a call for an extraordinary session, that call must specify a commencement date at least thirty-days *131 hence, thereby satisfying the thirty day notice and publication requirements of La. Const. art. X, § 29(C).
LASERS counters by pointing out that such a literal application of La. Const. art. X, § 29(C) produces the absurd consequence of preventing, for all practical purposes, consideration of public retirement system legislation at extraordinary sessions, which are typically called on short notice and have a constitutionally limited duration (no more than 30 calendar days, the minimum time allowed by La. Const. art. X, § 29(C) between publication of notice and introduction of a bill). It absolutely prohibits the legislature from considering such matters in times of public emergency caused by epidemic, enemy attack, or public catastrophe, occasions on which La. Const. art. III, § 2(C) authorizes the governor to convene the legislature in extraordinary session without any prior notice or proclamation. And, as a result, it interferes with and constrains the otherwise plenary power of the governor to convene an extraordinary session to address such issues.[3]
Although we agree with Ms. Fruge that the language of La. Const. art. X, § 29(C) is clear and unambiguous, its conflict with La. Const. art. III, § 2(B) presents a circumstance in which the full and unqualified exercise of its notice and publication provisions leads to the absurd consequence of detracting from and limiting the more specific provisions of the constitution addressing the notice requirements for extraordinary sessions, and the plenary power of the governor and legislature to convene such extraordinary sessions.[4] Louisiana Constitution art. III, § 2(B) is a clear and specific provision, with which the more general provision found in La. Const. art. X, § 29(C) conflicts. Therefore, it is our responsibility to attempt to harmonize the constitutional provisions placed in conflict by Act 165.
In doing so, we do not work on a clean slate. The essentially identical issue was initially presented to this court almost a century ago, in State ex rel. Sewerage & Water Board of New Orleans v. Michel, 127 La. 685, 53 So. 926 (1910). There, the Sewerage and Water Board of the City of New Orleans, along with certain taxpayers, sought a writ of mandamus to compel the Secretary of State to register and promulgate Senate Bill No. 1 of the Second Extra Session of the 1910 General Assembly. The Secretary of State refused to register and promulgate the bill, averring that it did not comply with the public notice requirements of Article 50 of the Louisiana Constitution of 1898, which provided:
No local or special law shall be passed on any subject not enumerated in Article 48 of this Constitution, unless notice of the intention to apply therefor shall have been published, without cost to the *132 State, in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the General Assembly of such bill, and in the same manner provided by law for the advertisement of judicial sales. The evidence of such notice having been published, shall be exhibited in the General Assembly before such act shall be passed, and every such act shall contain a recital that such notice has been given.
This court disagreed with the Secretary of State, holding that the thirty-day notice provision does not apply to legislation introduced during extraordinary sessions, explaining:
[I]t is evident that the power thus conferred on the Governor to convene the General Assembly [in extraordinary session], in order that it may legislate on matters of urgent necessity, and on the General Assembly so to legislate, is independent of the restriction imposed by article 50 of the Constitution, since the necessity for immediate legislation which would justify the convening of the General Assembly in extraordinary session could not be expected to yield to the requirement that notice of the intention so to legislate should be published for 30 days, without expense to the state. [Emphasis added.]
Michel, 127 La. at 690-691, 53 So. at 928. The holding of Michel was subsequently reaffirmed by this court. See, Williams v. Guerre, 182 La. 745, 768, 162 So. 609, 616 (1935) ("Assuming that Act No. 27 of 1934 (3d Ex.Sess.) was a local or special law ... under the decision of [Michel], which seems to be the only case on point, [S]ection 6 of [A]rticle 4 [of the Constitution of 1921, the corollary of Article 50 of the Louisiana Constitution of 1898] would not be applicable."); State ex rel Porterie v. Smith, 184 La. 263, 290, 166 So. 72, 81 (1935) ("Under the authority of State ex rel. Sewerage & Water Board [of New Orleans] v. Michel, 127 La. 685, 53 So. 926, even if Act 22 were a local or special law, [S]ection 6 of [A]rticle 4 of the Constitution [of 1921] would not be applicable, since the act was passed at a Special or Extraordinary Session. The correctness of the Michel Case has never been challenged or disputed.").
This court visited the issue again in State v. Cusimano, 187 La. 269, 174 So. 352 (1937). In Cusimano, the State sued the defendant for the balance due on a liquor license tax authorized by Act No. 24 of the Third Extra Session of 1935. The defendant refused to pay the license tax, claiming it to be unconstitutional for, among other reasons, the failure to comply with the notice and publication requirements for enacting local or special laws embodied in [S]ection 6 of [A]rticle 4 of the Louisiana Constitution of 1921. This court again disagreed, holding that the thirty-day notice requirement was not applicable to legislation introduced during an extraordinary session:
The power conferred on the Governor by the constitutional provision to convene the Legislature to legislate on designated subjects, and on the Legislature so to legislate, presupposes an urgent necessity for prompt action, and the exercise of such power is not controlled by the constitutional requirement that previous notice of the intention to enact permitted local or special laws shall be published for 30 days.
Cusimano, 187 La. at 275, 174 So. at 354-355, citing Michel,
Admittedly, Michel and its progeny were decided under prior constitutions and involved the predecessor to La. Const. art. III, § 13, the constitutional provision *133 which requires that notice of the intention to introduce a bill enacting a local or special law be published in the official journal of the locality where the matter to be affected is situated at least thirty days prior to the introduction of the bill in the legislature. However, the fact that a different constitutional provision is involved here (one affecting public retirement systems as opposed to one enacting local or special laws) does not dictate a different analysis or result. 20 LAMONICA & JONES, LOUISIANA CIVIL LAW TREATISE: LEGISLATIVE LAW AND PROCEDURE, § 2.12 at 34 ("The same exception to notice that appears to apply to local or special bills in special sessions should also apply to retirement bills,....").[5]
In fact, Ms. Fruge does not contend that our analysis of the notice provisions of La. Const. art. III, § 13 cannot be extended by analogy to the substantially similar notice requirements of La. Const. art. X, § 29(C); rather she argues that substantive changes in the 1974 Louisiana Constitution have largely invalidated the underlying rationale of Michel and its progeny, rendering suspect the continued viability of their holdings. According to Ms. Fruge, the Louisiana Constitutions of 1898 and 1921 did not make a distinction between extraordinary legislative sessions necessitated by public emergency and those convened by the governor for other purposes. This lack of distinction made it reasonable for this court, in Michel and Cusimano, to characterize extraordinary sessions as legislative sessions involving "matters of urgent necessity"[6] and as presupposing "an urgent necessity for prompt action,"[7] because, according to Ms. Fruge, the express language of La. Const. art. LXXV (1898) and La. Const. art. V, § 14 (1921) tied the convening of extraordinary sessions to emergency conditions. The 1974 Constitution, by contrast, does not tie extraordinary sessions to public emergency, but distinguishes between extraordinary sessions convened by the governor as a matter of executive prerogative, La. Const. art. III, § 2(B) (1974), and those convened in the event of public emergency, La. Const. art. III, § 2(C) (1974). This difference, Ms. Fruge asserts, compels a different analysis.
However, in neither Michel nor any of the cases which followed it, did the challenged *134 legislation involve matters of public emergency or arise out of an extraordinary session called under emergency circumstances. And, even a cursory examination of the language of our prior constitutions reveals that no substantive change was wrought by the 1974 Constitution.
Article LXXV of the Louisiana Constitution of 1898 provided:
He [the governor] shall take care that the laws be faithfully executed, and he may, on extraordinary occasions, convene the General Assembly at the seat of government, or, if that should have become dangerous from an enemy or from an epidemic, at a different place. The power to legislate shall be limited to the objects specially enumerated in the proclamation convening such extraordinary session; therein the Governor shall also limit the time such session may continue; provided, it shall not exceed thirty days. Any legislative action had after the time so limited, or as to objects not enumerated in said proclamation, shall be null and void.
Contrary to Ms. Fruge's allegations, the governor's authority to convene an extraordinary session was not limited to a public emergency, but to a time frame, which could not exceed thirty days, and to the objects specially enumerated in the proclamation convening the extraordinary session. The provisions of Article V, § 14 of the Louisiana Constitution of 1921 continue this limitation, which again is not tied to a public emergency, although under the 1921 Constitution, a distinction is drawn between extraordinary sessions called on the governor's own initiative and extraordinary sessions called in the event of a public emergency, the latter being exempt from the notice and proclamation requirements of the former:
He [the governor] shall take care that the laws be faithfully executed, and may, on extraordinary occasions, convene the Legislature at the seat of government, or, if that should have become dangerous from an enemy, or epidemic, at a different place. It shall become his duty to convene the Legislature in extraordinary session whenever petitioned to do so by two-thirds of the members elected to each house....
The power to legislate, under the penalty of nullity, shall be limited to the objects specially enumerated in the proclamation of the Governor, ... convening such extraordinary session, and the session shall be limited to the time named therein, which shall never exceed thirty days.
Whenever the Governor on his own initiative desires to convene the Legislature in extraordinary session in addition to the requirements hereinabove set forth the Governor shall be required in his proclamation to fix the date of the commencement of said extraordinary session and shall have given five days notice in writing to each member of the Legislature that he will call said extraordinary session on the date fixed in the proclamation and which date shall be not less than five days subsequent to the date on which said notice to said Legislators was mailed, except on such occasions as epidemics, attacks by the enemy, or public catastrophe. [Emphasis added.]
La. Const. art. V, § 14 (1921).
The 1974 Constitution, at Article III, simplifies but maintains much of the language of the 1921 Constitution.[8] It basically *135 divides what was one paragraph in the 1921 Constitution into two: section 2(B) which involves extraordinary sessions called on the governor's own initiative and requiring five days notice, in the form of a proclamation, of the objects to be considered at said session; and section 2(C) which involves extraordinary sessions called in the event of public emergency, which require no prior notice or proclamation. The reason for breaking the provision into two paragraphs was explained by one of the delegates to the 1973 Constitutional Convention:
As I understand it, ... in the original section, in the original draft of the legislative department there was no requirement of a five day notice. Therefore, this would have been unnecessary. When the five day notice was inserted and placed in their report, they overlooked the emergency situation and the purpose of this is merely to take care of emergencies as they are taken care of in the present constitution.
Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. V, 17th Days Proceedings July 19, 1973, p. 312.
Clearly, in drafting the provisions of La. Const. art. III, § 2(B) and (C), the redactors intended no change in the constitution from prior law. The 1921 Constitution distinguished between extraordinary sessions necessitated by public emergency and those convened by the governor for other purposes, and that distinction was preserved and carried forth, in much the same manner, in the 1974 Constitution.[9] As a result, and contrary to Ms. Fruge's contention, it is clear that the underlying rationale of Michel and its progeny remains valid.
Even were such not the case, however, and we were considering this matter for the first time, we would find ourselves constrained by our rules of interpretation to accord the words of La. Const. art. III, § 2(B) their generally understood meaning. Malone, 06-2190 at 7, 937 So.2d at 349; Ocean Energy, 04-0066 at 7, 880 So.2d at 7. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary." WEBSTER'S NEW COLLEGIATE DICTIONARY, 11th ed. (2003) at p. 444. According to the generally understood meaning of the word, then, an extraordinary session is one which calls for action that cannot be taken in regular course. Indeed, the shortened time period permitted for an extraordinary session (no more than thirty calendar days) presupposes a necessity for "prompt action,"[10] and the limited scope of the session (only those objects enumerated in the proclamation) presupposes matters of "urgent necessity"[11] which cannot be addressed in a regular session. This is precisely what this court recognized in Michel The reasoning of that decision remains as relevant today as when it was first put forth.
Any other interpretation of the interplay of these constitutional provisions ignores the fundamental distinction between regular and extraordinary sessions of the legislature. Regular sessions commence on a *136 regular date, fixed by law, and there is a deadline for pre-filing bills to be introduced in either house. La. Const. art. III, § 2(A). Extraordinary sessions, on the other hand, are spontaneously called. In place of a deadline for pre-filing bills, there is a requirement that notice, in the form of a proclamation stating the objects of the session, be provided at least five days in advance of the session. La. Const. art. III, § 2(B). The requirement of at least five days notice serves the same function as the thirty-day advertisement requirement of La. Const. art. X, § 29(C); it simply shortens the advance notice required to make it consistent with the shortened periods and agendas that apply to extraordinary sessions.
Further, and consistent with another of our well-settled rules of interpretation, we presume that the legislature was aware of the interpretation that had been given to the constitutional provisions by the jurisprudence. State, Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment, 94-1872, 94-1914, p. 17 (La.5/22/95), 655 So.2d 292, 301 n. 10 (reciting the rule that those who enact laws are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of construction, and with knowledge of the effect of their acts and a purpose in view). Yet, a review of the transcripts of the Constitutional Convention of 1973, reveals that, as a general proposition, in enacting La. Const. art. X, § 29(C), the redactors intended no change in the law. After a reading of the proposed provision, it was explained:
Mr. Chairman, members of the convention, this section has to do with intent to change the retirement system and the procedure which you should follow in making the changes. The proposed constitution says that "you must advertise twice in the Official Journal on two separate days, the last day which would be thirty days prior to the introduction of this bill." It retains the requirement that "such notice states the substance of the contemplated law or proposal contained in the notice that shall be given." The constitution today provides that "any change in the constitution must be advertised on three successive days, thirty days prior to the regular session." This just changes it to twice, thirty days prior to the introduction of bills for intent to change the retirement system. It's a very simple thing and it is contained in the present constitution.
Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. IX, 92nd Days Proceedings December 5, 1973, p. 2592. Indeed, the changes that were effected in the language of this particular provision were explained as necessary "to make it coincide with the legislature session, I believe it was, where you have to give notice of publication for passage of local and special laws." Id. And, at the time this explanation was advanced, the jurisprudence clearly held, by virtue of Michel and its progeny, that the notice and advertisement requirements for passage of local and special laws were not applicable to legislation introduced during extraordinary sessions of the legislature.
In the final analysis, our review of the provisions of the 1974 Constitution reveals that, as a general proposition, the redactors intended no change in the law concerning extraordinary sessions and the notice requirements connected therewith. The rule that the notice requirements for extraordinary sessions are stand-alone provisions, exempt from the notice and *137 advertising requirements for local and special laws, and by analogy, for laws affecting the public retirement system, has been a part of our law over several constitutional revisions, and remains so today.
For ninety-eight years, this court has followed and endorsed the Michel analysis. State v. Cusimano, 187 La. 269, 174 So. 352 (1937); State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72 (1935); Williams v. Guerre, 182 La. 745, 162 So. 609 (1935). Numerous statutes have been enacted at extraordinary sessions in reliance on the assurance that the governor is constitutionally empowered to call extraordinary sessions and that in doing so, he is bound only by the limitations and notice requirements set forth in the constitutional provision addressing extraordinary sessions.[12]
Although we are bound by the words of the statutes and the constitution, as we have noted, once this court has ruled on an issue, we should be extremely reluctant to change our position, as both the legislature and society should be able to rely on the finality of our pronouncements. Stability and predictability in the law demand such a result. Borel v. Young, 07-0419, p. 21 (La.11/27/07), 989 So.2d 42, 65 (on reh'g). The cases from this court, spanning ninety-eight years, endorsing the Michel interpretation of the notice provisions of extraordinary sessions as stand-alone provisions, are of considerable persuasive authority, which in the absence of a definitive change, should be respected by this court.
In challenging the constitutionality of Act 165, Ms. Fruge has the heavy burden of demonstrating, clearly and convincingly, that it was the constitutional aim of La. Const. art. X, § 29(C) to deny the legislature the power to consider and enact Act 165 at an extraordinary session, convened pursuant to the directives of La. Const. art. III, § 2(B). For the reasons expressed above, we find that Ms. Fruge has failed in her burden of proof. Even Ms. Fruge acknowledges in brief that it would produce an absurd result to hold that La. Const. art. X, § 29(C) should apply to extraordinary sessions called in instances of public emergency; otherwise changes to the public retirement system could not be effected in times of public catastrophe, such as a financial collapse. However, she fails to explain how the language of La. Const. art. X, § 29(C) that she interprets as admitting of no exception, would justify an exception for extraordinary sessions called in times of public emergency, but not for extraordinary sessions called for any other reason. The notice and publication requirements of La. Const. art. X, § 29(C) can only be reconciled and harmonized with the separate notice requirements of La. Const. art. III, § 2(B) by holding, as this court has done with respect to the notice and publication requirements of La. Const. art. III, § 13, that La. Const. art. III, § 2(B) is a stand-alone provision, and that La. Const. art. X, § 29(C) does not apply to legislation enacted in extraordinary sessions of the legislature.[13]

*138 CONCLUSION
For the reasons set forth above, we reverse the judgment of the district court granting Ms. Fruge's motion for summary judgment, declaring Act No. 165 of the 2002 First Extraordinary Session unconstitutional, null, void, and unenforceable, and declaring Ms. Fruge immediately eligible for the retire/rehire benefits provided under LSA-R. S. 11:416 as it existed prior to its amendment and reenactment under Act 165 of the 2002 First Extraordinary Session. Finding that there are no disputed issues of material fact, and that LASERS is entitled to judgment as a matter of law, we hereby grant summary judgment in favor of LASERS.
JOHNSON, J., dissents.
TRAYLOR and KNOLL, JJ., dissent and assign reasons.
REVERSED AND RENDERED.
TRAYLOR, Justice, dissenting.
I respectfully dissent. The majority opinion finds that the notice and publication requirements of La. Const. art. 10, Section 29(C) can only be reconciled and harmonized with the separate notice requirements of La. Const. art. 3, Section 2(B) by holding that La. Const. art. 3, Section 2(B) is a stand-alone provision, and that La. Const. art. 10, Section 29(C) does not apply to legislation enacted in extraordinary sessions of the legislature. However, the wording of La. const. art. 10, Section 29(C) is clear, unambiguous, and admits of no exceptions. It states, in pertinent part: "No proposal to effect any change in existing laws ... relating to any retirement system for public employees shall be introduced in the legislature unless notice of intention to introduce the proposal has been published ... in the official state journal on two separate days. The last day of publication shall be at least thirty days before introduction of the bill." The notice, publication and recital requirements contained in La. Const. art. 10, Section 29(C) represent protections promulgated by the delegates of the Louisiana Constitutional Convention of 1973 to and in favor of the members of public retirement systems, for the purpose of restricting changes to public retirement systems without sufficient notice to the citizens who are members of these systems.
I agree that the governor's authority to convene an extraordinary session is not limited to a public emergency. However, it is generally accepted that an extraordinary *139 session is one which calls for action that cannot be taken in regular course and presupposes matters of urgent necessity which cannot be addressed in a regular session; it is not designed for consideration of matters so as to avoid constitutional notice requirements. The subject matter of Act 165 of the 2002 First Extraordinary Session did not require prompt action. Further, the clear, unambiguous language of La. const. art. 10, Section 29(C) requires thirty days notice before consideration of any proposal relating to public retirement systems, even in an extraordinary session.
KNOLL, Justice, dissenting.
With all due respect, I disagree with the majority. I find the majority opinion's analysis is fatally flawed because there is no conflict between La. Const. Art. X, § 29(C) and La. Const. Art. III, § 2(B).
According to the general rule, articles of the constitution are to be construed and interpreted using the same canons of interpretation applicable to statutes and written instruments. State v. Expunged Record (No.) 249,044, 03-1940, p. 4 (La.7/2/04), 881 So.2d 104, 107; Barnett v. Develle, 289 So.2d 129, 146 (La.1974). Thus, under the well-established rules of statutory construction, any interpretation of constitutional provisions begins with the language of the constitution itself. Record, 03-1940 at p. 4, 881 So.2d at 107; Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066, pp. 6-7 (La.7/6/04), 880 So.2d 1, 7. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. Cajun Elec. Power Co-op., Inc. v. Louisiana Pub. Serv. Com'n, 544 So.2d 362, 363 (La.1989) (on rehearing); Perschall v. State, 96-0322, p. 21-22 (La.7/1/97), 697 So.2d 240, 255. Where the language of a constitutional provision makes its aim evident and unequivocal, courts may not arrive at a construction that detracts from the effectiveness or distorts the manifest meaning and purpose of the related provisions by separately considering related constitutional provisions and likewise need not consider the historical basis for the provision. Perschall, 96-0322 at p. 22, 697 So.2d at 256; Barnett, 289 So.2d at 146. Moreover, where it is possible, courts have a duty to adopt a construction of the relevant provision which harmonizes and reconciles it with other provisions dealing with the same subject matter. See La. Civ.Code art. 13.
La. Const. Art. X, § 29(C) provides:
No proposal to effect any change in existing laws or constitutional provisions relating to any retirement system for public employees shall be introduced in the legislature unless notice of intention to introduce the proposal has been published, without cost to the state, in the official state journal on two separate days. The last day of publication shall be at least thirty days before introduction of the bill. The notice shall state the substance of the contemplated law or proposal, and the bill shall contain a recital that the notice has been given.
La. Const. Art. III, § 2 provides, in relevant part:
(B) Extraordinary Session. The legislature may be convened at other times by the governor and shall be convened by the presiding officers of both houses upon written petition of a majority of the elected members of each house. The form of the petition shall be provided by law. At least five days prior to convening the legislature in extraordinary session, the governor or the presiding *140 officers, as the case may be, shall issue a proclamation stating the objects of the session, the date on which it shall convene, and the number of days for which it is convened. The power to legislate shall be limited, under penalty of nullity, to the object specifically enumerated in the proclamation. The session shall be limited to the number of days stated therein, which shall not exceed thirty calendar days.
According to the majority, the enactment of Act 165 places in conflict the five-day notice requirement for legislation introduced during extraordinary sessions under La. Const. Art. III, § 2(B) and the longer thirty-day notice required for legislation relating to the retirement systems for public employees under La. Const. Art. X, § 29(C). However, this premise as well as the conclusions based upon it, are flawed because by the plain language of the provisions no such conflict exists.
The language of La. Const. Art. X, § 29(C), as noted by the majority, is clear, unambiguous, and admits no exceptions to its requirement that no proposal to effect any change in existing law relating to any retirement system for public employees shall be introduced unless notice of intention to introduce the proposal has been published at least thirty days before introduction of the bill. Likewise, the wording of La. Const. Art. III, § 2(B) is clear, unambiguous, but admits no exemption to the publication requirements of La. Const. Art. X, § 29(C), merely providing that the governor or presiding officers shall issue a proclamation stating the objects of the extraordinary session at least five days prior to convening the Legislature in extraordinary session. Clearly, nothing in La. Const. Art. III, § 2(B) impedes or prevents compliance with the thirty-day notice requirement of La. Const. Art. X, § 29(C) in extraordinary sessions as long as the objects of the session are proclaimed by the governor or presiding officers at least five days prior to convening the Legislature in extraordinary session. As the plaintiff so aptly explained in her brief, if the governor or a majority of elected members should determine that an extraordinary session is necessary, and if legislation regarding a public retirement plan was to be included on the agenda, the call for the session need only specify a commencement date not less than thirty-days hence, thus allowing for the notice and publication requirements of La. Const. Art. X, § 29(C).[1] Such a construction neither detracts from the effectiveness nor distorts the manifest meaning and purpose of the relevant constitutional provisions, but rather allows both provisions to stand and be given effect.
Because there is no conflict between the relevant constitutional provisions, the majority need not have engaged in an analysis to harmonize the two provisions, and thus, its reliance on State ex rel. Sewerage & Water Board of New Orleans v. Michel, 127 La. 685, 53 So. 926 (1910) and its progeny in this endeavor was unnecessary. Such reliance on this jurisprudence was also misplaced. As the majority readily admits, these cases were decided under prior constitutions and involved the predecessor to La. Const. Art. III, § 13, governing notice and publication of the intention to introduce a bill enacting a local or special law.
Simply put, the problem in the instant case is not that the enactment of Act 165 places constitutional provisions in conflict, but that the Legislature failed to comply *141 with the constitutional publication requirements in its effort to effect a change in existing laws relating to the Louisiana State Employees' Retirement System. As there is no evidence introduced to establish that the Legislature complied with the notice, publication, and recital requirements provided for in La. Const. Art. X, § 29(C) in its enactment of Act 165 and the parties do not dispute that said requirements were not satisfied, I find the district court did not err in declaring said act unconstitutional, null, void, and unenforceable, and I would affirm its judgment.
NOTES
[1] La. Const. art. V, § 5(D) provides this court with appellate jurisdiction when "a law or ordinance has been declared unconstitutional."
[2] Ms. Fruge does not contest the validity of the proclamation calling for the extraordinary session, nor does she challenge whether Act 165 (originating as HB-130) falls within the scope of that proclamation. Neither does she assail the constitutionality of the Act on any grounds other than the alleged violation of La. Const. art. X, § 29(C), the constitutionality of the substantive provisions of Act 165 having been previously upheld by this court in Smith v. Board of Trustees of Louisiana State Employees' Retirement System, 02-2161 (La.6/27/03), 851 So.2d 1100.
[3] In support of its position, LASERS points to 20 LAMONICA & JONES, LOUISIANA CIVIL LAW TREATISE: LEGISLATIVE LAW AND PROCEDURE, § 2.11 at 33 (2004), wherein the authors note: "Special sessions cannot exceed 30 calendar days in length, and the session `call' can be issued anytime up to five days before the start of the special session. Requiring advertising of legislation already included in the call, with the mandatory [thirty-day] time periods between publication of notice and introduction, could easily create an absurd resultthe prohibition of any introduction, let alone consideration, of the legislation during the special session." (Footnote omitted.)
[4] We have previously recognized that the governor is authorized and empowered by the constitution to call extraordinary sessions of the legislature, and that he is the sole judge as to whether or not the occasion for his call exists, and his decision in this respect is not subject to question by the courts. Williams v. Guerre, 182 La. 745, 767, 162 So. 609, 615-616 (1935).
[5] In fact, a comparison of the provisions of La. Const. art. III, § 13 and art. X, § 29(C) reveals no basis for differentiating the two, the publication requirements being nearly identical.

As regards local and special laws, La. Const. art. III, § 13 provides:
No local or special law shall be enacted unless notice of the intent to introduce a bill to enact such a law has been published on two separate days, without cost to the state, in the official journal of the locality where the matter to be affected is situated. The last day of publication shall be at least thirty days prior to introduction of the bill. The notice shall state the substance of the contemplated law, and every such bill shall recite that notice has been given.
As regards laws affecting the public retirement system, La. Const. art. X, § 29(C) provides:
No proposal to effect any change in existing laws or constitutional provisions relating to any retirement system for public employees shall be introduced in the legislature unless notice of intention to introduce the proposal has been published, without cost to the state, in the official state journal on two separate days. The last day of publication shall be at least thirty days before introduction of the bill. The notice shall state the substance of the contemplated law or proposal, and the bill shall contain a recital that the notice has been given.
[6] Michel, 127 La. at 690, 53 So. at 928.
[7] Cusimano, 187 La. at 275, 174 So. at 354-355.
[8] The only truly substantive distinction between the 1921 and 1974 Constitutions lies in the fact that under the 1974 Constitution, an extraordinary session may be convened upon petition of a simple majority of the elected member of each house, as opposed to the two-thirds majority required under the 1921 Constitution.
[9] In fact, although the heading of La. Const. art. III, § 2(C) uses the word "emergency," the body of the provision defines an "emergency session" as a species of extraordinary sessionan "extraordinary session without prior notice or proclamation in the event of public emergency"thereby continuing the distinction articulated in the 1921 Constitution.
[10] Cusimano, 187 La. at 275, 174 So. at 354-355.
[11] Michel, 127 La. at 690, 53 So. at 928.
[12] In fact, it appears that Act 165 was itself enacted in reliance on Michel and Cusimano. The Minutes, House Committee on Retirement, 2002 First Extraordinary Session, April 2, 2002, p. 15, reflect that objections were raised to consideration of all items in the governor's call affecting the public retirement system on grounds that La. Const. art. X, § 29(C)'s publication requirements were not satisfied. The objections were met with the statement that Cusimano is the controlling law, and under Cusimano, the notice requirements of La. Const. art. X, § 29(C) do not apply to extraordinary sessions.
[13] Another long-standing rule of statutory construction is that when the legislature changes the wording of a statute, it is presumed to have intended a change in the law. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 17 (La.6/29/01), 808 So.2d 294, 305. Given this rule, it might be argued that when in enacting La. Const. art. X, § 29(C), the redactors changed the wording of the former provision from "[n]o proposal to amend or effect any change in existing laws or provisions of the constitution relating to any retirement system in this state shall be introduced into the legislature unless notice of intention to introduce such proposal shall have been published in the official state journal of the state on three separate days at least thirty days prior to the convening of the legislature in regular session[,]" La. Const. art. 19, § 25 (1921), to "[n]o proposal to effect any change in existing laws or constitutional provisions relating to any retirement system for public employees shall be introduced in the legislature unless notice of intention to introduce the proposal has been published, without cost to the state, in the official state journal on two separate days. The last day of publication shall be at least thirty days before introduction of the bill," La. Const. art. X, § 29(C), thereby omitting the reference to a regular session, the redactors intended a change in the law. However, the presumption that applies when there is a change in the wording of a statute is just that, a presumption, which can be defeated by evidence such as exists here that no change was intended, and the constitutional provision was reworded simply to make it consistent with La. Const. art. III, § 13.
[1] This case does not address the issue of whether the publication requirement conflicts with the waiver of notice contained in La. Const. Art. III, § 2(C) as the extraordinary session at issue was not an emergency session.